[No. 5337. Decided March 22, 1905.]

H. C. PETERS, *Appellant,* v. JAMES VAN HORN *et al.,*
*Respondents.*[1]

VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—FAILURE OF
TITLE—KNOWLEDGE OF VENDEE BEFORE SUIT—EQUITY—JURISDICTION.
A purchaser of lands cannot maintain an action in equity for
specific performance, or for damages in case specific performance
cannot be had, where he knew, before the action was commenced,
that the vendor could not perform the contract for want of title,
since equity will not exercise jurisdiction where the remedy of
damages is all that can be decreed.

Appeal from a judgment of the superior court for Skagit
county, Joiner, J., entered March 1, 1904, upon findings
in favor of the defendants, after a trial on the merits be-
fore the court without a jury, in an action for specific
performance. Affirmed.

*John E. Ryan,* for appellant.

*Root, Palmer & Brown,* for respondents.

FULLERTON, J.—On December 15, 1902, the respond-
ents entered into the following contract with one J. B.
Hawthorne:

"Everett, Wash., December 15th, 1902.
"In consideration of one (1) dollar to me in hand paid,
and other valuable considerations, I hereby agree to sell and
deliver to J. B. Hawthorne, upon payment to me of thirty-
two thousand (32,000) dollars, on or before February 15th,
1903, the following described lands: The north half of the
north half of sec. 25, town. 36, R. 9 E. The south half of
the northwest quarter sec. 25, town. 36, R. 9 E. The
northwest quarter of the southwest quarter, sec. 25, town.
36, R. 9 E. The southeast quarter of the northeast quar-
ter sec. 26, town. 36, R. 9 E. The northeast quarter of
the southeast quarter sec. 26, town. 36, R. 9 E. The south

1Reported in 79 Pac. 1110.

half of the southeast quarter sec. 26, town. 36, R. 9 E. The northwest quarter of the northeast quarter sec. 35, town. 36, R. 9 E. The south half of the northwest quarter sec. 35, town. 36, R. 9 E. The northeast quarter of the northwest quarter sec. 35, town 36, R. 9 E. The northwest quarter of the southwest quarter sec. 35, town. 36, R. 9 E. Also 15, 40 acre tracts along Jackman creek in sections 4-5-7-8, town. 35, R. 9 E. Also, one shingle mill, complete with machinery, dry kiln and sheds, etc., with five acres of ground including strip on which present side track or switch is located at Van Horn, Wash. Also, one flume about two and one-half miles in length. Also, one saw mill of 20,000 daily capacity located at the upper end of said flume, also logging outfit consisting of one donkey engine, wire cable, blocks, tackle and tools."

Thereafter Hawthorne sold his interest in the contract to appellant, H. C. Peters. On February 16, 1903, the respondents granted the appellant an extension of time for the performance of the contract, the same being in writing and to the following effect:

"In consideration of the cost of examining and cruising the timber, the above option is hereby extended to H. C. Peters, of St. Paul, until February 25th, 1903. And on payment of five hundred ($500) dollars on or before said date, will be extended to March 5th, 1903; said payment to apply on purchase price if taken. On payment of full amount under this option we agree to convey to N. C. Peters, or his assigns, by warranty deed conveying good title, the said land and machinery and will furnish abstract showing good title. James Van Horn, Kate Van Horn."

And on March 5 another extension of time was granted, as follows:

"In consideration of one dollar to us in hand paid, the receipt whereof is hereby acknowledged, the above option, in every part, is hereby extended to H. C. Peters, of St. Paul, Minn., until March 10th, 1903; and on payment of five hundred ($500) on or before said date of March 10th, 1903, by the said H. C. Peters or his attorney, the above

and foregoing option will be extended to March 12th, 1903, said payment of $500 to be applied on purchase price, if taken. The typewritten part of the documents hereto attached is admitted to be a true and correct copy of the original options on which the foregoing extension is given, and we hereby ratify and confirm said original options in each and every particular of the same. James Van Horn, Kate Van Horn."

On March 9 the following notice was served on the respondents:

"To James Van Horn and F. E. Randolph, his attorney:

"Dear Sirs: I hereby accept the offer made by you to myself through my attorney, John E. Ryan, on date of March 5th, 1903, for those certain tracts and parcels of timber land and all appurtenances thereunto belonging, for thirty-two thousand ($32,000) dollars, said land and tenements being more fully and particularly described in the options given H. C. Peters at a previous date hereof. Under the terms and conditions of said options, in said aforementioned agreements, the title to the property in question was to be perfected and conveyed to me by a good and valid title or warranty deed. I further give notice that the consideration of $32,000 is ready to be turned over, upon your delivery to my attorney, John E. Ryan, of the abstracts of title to said property, and upon his having favorably passed upon the same.

"Dated at Seattle, Washington, this 9th day of March, 1903. John E. Ryan, Attorney for H. C. Peters."

After the receipt of this notice, the respondents executed and tendered to the appellant their warranty deed to the land described in the contract, tendering at the same time an abstract showing the title they had thereto, and demanded payment of the contract price. The appellant refused to accept the deed or pay the price, on the ground that the respondents' title to a part of the land was defective. Thereafter the appellant brought this action to en-

force specific performance, or, in case specific performance could not be had, to recover damages in lieu thereof. The trial court held he could not recover, and entered a judgment dismissing his action.

It is conceded that the respondents have no legal title to a part of the lands in question; namely, those described as the "15, 40 acre tracts along Jackman creek in sections 4-5-7-8, town. 35, range 9 east." These lands were selected by virtue of the act of Congress of June 4, 1897, 30 Stat. 36, granting to the owner of a tract of land included within the limits of a public forest reservation the right to relinquish such tract to the government, and select in lieu thereof a tract of vacant land, open to settlement, not exceeding in area the tract relinquished to the government. The township from which the selections were made was not sectionized, and, of course, it was impossible to know where the lines of the particular tracts when surveyed would run. The selections were liable to be defeated, also, by adverse claims antedating the selection by the respondents, and by the lands proving to be mineral in character. There was, therefore, not only no legal title to those several tracts, but no equitable title which could with certainty be reduced to a legal title. The appellant declined to accept a part performance; he insisted that the contract be performed according to its terms, or not at all.

The question that first arises, and the only one we have found necessary to notice, is, can the appellant maintain this action? We think that, upon his own showing, he cannot. As early as 1892, in *Morgan v. Bell*, 3 Wash. 554, 28 Pac. 925, 16 L. R. A. 614, this court held that an action for the specific performance of a contract to convey real property will not lie in favor of one who knows, prior to the commencement of such action, that the defendant is incapable of performing the contract for want of title. Giving the reasons for the rule, the court said:

"It is the fundamental principle regulating the exercise of this equitable jurisdiction that, whenever the legal remedy of damage is sufficient, equity will not interfere and the specific performance will be refused. Pomeroy on Contracts, Sec. 47. We take it that the fair corollary to this proposition would be, that where the legal remedy of damages is all that can be decreed, equity will not exercise jurisdiction, and the original proposition applies more forcibly where the fact is determined that legal damages are all that is actually sought; and in this case the plaintiffs must have brought their action on the theory that a compensation in damages would furnish a complete and satisfactory remedy, for they knew that no other remedy could be decreed. The presumption that the award of damages will not be an adequate remedy is the very foundation of the jurisdiction to decree specific performance; and it philosophically and logically follows that jurisdiction will not attach when the inadequate remedy is all that can be enforced. Any other construction renders inharmonious the operations of law, and confuses the principles upon which the jurisdiction is based."

The case at bar falls within this rule. The appellant, before commencing his action, knew that the defendants could not perform their contract for want of title, for he had rejected the performance tendered for the very reason that no title was conveyed to a part of the lands by the deeds offered him. And, as he refused to accept a part performance, he must have brought his action on the theory that compensation in damages would furnish a complete and satisfactory remedy. This, we held in the case just quoted from, he is not permitted to do.

The judgment appealed from is affirmed.

Mount, C. J., Hadley, and Dunbar, JJ., concur.

Rudkin, Root, and Crow, JJ., took no part.