# JULY TERM, 1909.

*PRESENT:*

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. CLARK A. SMITH,
Hon. SILAS W. PORTER,       }Justices.
Hon. CHARLES B. GRAVES,
Hon. ALFRED W. BENSON,

The Grand Lodge of the Independent Order of Odd Fellows of the State of Kansas v. James A. Troutman *et al.*

No. 15,353.

SYLLABUS BY THE COURT.

1. Limitation of Actions—*Accrual of Action to Recover Cost of Improvements — Tolling the Statute — "Another Action Pending."* A and B entered into a contract for the mutual purpose of establishing and perpetually maintaining a private charity. A agreed to and did execute a deed purporting to convey a large tract of land to trustees for the purpose. B agreed to and did pay off an equitable lien on the land, and agreed to and did pay for the erection of buildings thereon for the purpose. After the death of A his sole heir brought a suit to set aside the deed, alleging that it was void. B was made a party defendant to the suit, and filed an answer or cross-petition asking for the money paid for the betterment of the estate and praying that it be adjudged a lien upon the land. Such proceedings were thereafter had in the suit that B was discharged as a party thereto. Judgment was finally rendered therein adjudging the deed of A void as against the rule prohibiting perpetuities of title in estates. *Held*, that B's cause of action to have the money he contributed to the betterment of the estate adjudged a lien thereon became absolute upon the bringing of the suit to avoid the deed, and was not contingent upon the rendition of judgment therein; *held*, further, that the present action, brought by B more than five years after the suit was brought to set aside the deed, and

more than five years after B was discharged as a party thereto, is barred by the statutes of limitations.

2. QUITCLAIM DEED—*Assignment of Lien.* The quitclaim deed pleaded as a defense in this case is held to have conveyed all rights the plaintiff may have had, prior to the execution and delivery thereof, in the lands upon which an equitable lien is sought, and, interpreted with the resolution embodied therein, conclusively evidences an intention of the plaintiff to abandon and sever all its connection with the enterprise known as the DeBoissiere Odd Fellows' Orphans' Home.

Error from Osage district court; ROBERT C. HEIZER, .judge. Opinion on rehearing, filed July 3, 1909. Affirmed. (First opinion not reported.)

.STATEMENT.

THE preliminary facts leading up to the bringing of this action are stated in the opinion ·in *Troutman v. DeBoissiere,* 66 Kan. 1. In that case, in accordance with the mandate of this court, the district court of Franklin county, in March, 1903, entered final judgment awarding the title and right of possession to the large tract of land theretofore known as the Odd Fellows' Orphan Children's Home to the defendants in error herein, Troutman and Stone. The plaintiff in ·error commenced this action February 11, 1904, in the district court of Osage county, and in its amended petition alleged that it is an eleemosynary, fraternal and benevolent corporation, maintained by assessments upon and contributions from its members and subordinate lodges under its jurisdiction and control; that by virtue of its by-laws, rules and regulations it has power and authority to make, levy and collect assessments from such members and subordinate lodges; that in 1892 DeBoissiere, being the owner of a tract of land ·and wishing to establish a school and home for orphan ·children of deceased Odd Fellows of the state of Kansas, proposed orally to the duly accredited officers of the ·plaintiff that if it would pay or cause to be paid to one ꞉Sears the sum of $17,500 and interest, to pay off· an

equitable lien which Sears had upon the land, and would from time to time advance money to the trustees to be designated by DeBoissiere to improve the land and erect buildings and other improvements thereon, he would convey to such trustees the full and free fee simple title to all of the land for the purposes named. The plaintiff further alleged that it accepted the proposition; that DeBoissiere did make a deed to the lands to certain trustees, who are named in the deed, a copy of which is made a part of the petition; and that, relying upon the agreement, the plaintiff paid, through the trustees, to Sears the amount of the specified indebtedness (about $20,000), and further paid to such trustees $15,000 which was by them expended for buildings and improvements on the land. The petition further recited the death of DeBoissiere in 1894, the bringing of a suit in Franklin county by Corrinne Martinelli, his sole heir, in 1896, to set aside the deed, and that the defendants in error during the pendency of the action procured and recorded a deed to themselves from Corrinne Martinelli and became substituted as plaintiffs in that action; that Corrinne Martinelli and the defendants in error at all the times mentioned knew of the contract between the plaintiff and DeBoissiere and of the indebtedness to Sears, and of the performance of the contract on its part. The petition further recited the decision of this court and the final judgment in the district court of Franklin county, and prayed that the plaintiff might be adjudged to have an equitable lien upon the lands for the amount of the indebtedness paid to Sears and the amount paid for the making of improvements upon the land.

The defendants, Troutman and Stone, filed an answer in which they admitted nearly all of the allegations of the petition above referred to, but denied the payment by the plaintiff of any indebtedness or lien to Sears and the application of any money paid by the plaintiff to making improvements on the land. The answer also

set up several special defenses; among others, that the action was barred by limitation and that the final judgment in the district court of Franklin county rendered the plaintiff's claim *res judicata.* The special defenses and allegations of fact in the answer that are regarded as material in the determination of the case are that in 1896 Corrinne Martinelli brought suit in the district court to set aside the DeBoissiere deed to the trustees, to recover possession of the premises and to determine the rights and liabilities of all parties, including the plaintiff; that the plaintiff was served with summons, appeared, and filed an answer and cross-petition, a copy of which is attached to the answer as an exhibit and shows that the plaintiff then set up substantially the claim herein involved, asking for a lien on the real estate. A copy of the journal entry in that action was attached, which shows that upon the hearing of the motion for judgment in accordance with the mandate of the supreme court appearance was made by the defendants, not excepting this plaintiff. Judgment was rendered therein in favor of the substituted plaintiffs, defendants herein, on March 23, 1903. The answer also alleged that in June, 1907, the plaintiff brought an action in the district court of Franklin county against the trustees, these defendants and others, on the same claim for money sought to be recovered in this action, asking that it be adjudged to have an equitable lien on the land involved herein, and that the action was dismissed on the motion of the plaintiff therein. It also alleged that the plaintiff, at its regular annual convocation in October, 1894, renounced all claim to or interest in the property and instructed its officers to convey to the trustees all the interest, claim or title of the plaintiff therein, and that such conveyance was made. A copy of the deed containing the resolution is as follows:

"THIS INDENTURE, made this 10th day of October, A. D. 1894, between the Grand Lodge Independent

Order of Odd Fellows of Kansas, a corporation of the state of Kansas, party of the first part, and the De-Boissiere Odd Fellows' Orphans' Home and Industrial School Association of Kansas, a corporation of the state of Kansas, party of the second part,

"WITNESSETH: That said party of the first part, in consideration of the sum of one ($1) dollar, the receipt of which is hereby acknowledged, and in the further consideration of the order duly made by the said Grand Lodge Independent Order Odd Fellows of Kansas, party of the first part, in regular session, on the 10th day of October, 1894, in the following words and figures, to wit: 'Brother J. Jay Buck, of Lodge No. 15, offered the following resolution, which was unanimously adopted:

" 'Whereas, on May 11th, 1892, Mr. DeBoissiere conveyed certain real and personal property situated in Franklin county, Kansas, to L. C. Stine, George A. Huron, M. B. Ward, Charles L. Robbins, and George W. Jones, in trust for the DeBoissiere Odd Fellows' Orphans' Home and Industrial School Association of Kansas; and, whereas, this grand lodge assumed to accept the same at its session in 1892, and in 1893 levied a tax for the support thereof; and, whereas, it is claimed by some that this grand body has some interest therein, and by others it is claimed that this body has neither interest in nor control over the same, and believing it not prudent longer to attempt any connection between this grand lodge and said orphans' home; therefore,

" 'Resolved, that this grand lodge does hereby renounce all claim to, interest in, control over, or connection with, said orphans' home, further than to give it its blessing.

" 'Resolved, that this grand lodge hereby rescinds all former action taken in connection with or pertaining to said orphans' home.

" 'Resolved, that the grand master and the grand secretary convey by quitclaim deed under seal of this grand lodge, to said corporation, all interest, claim or title which it may have acquired by virtue of said deed made by Mr. DeBoissiere, or because of any action heretofore taken by this grand lodge concerning said home.'

"Does by these presents remise, release and quitclaim unto said party of the second part, its successors and assigns, all the following-described real estate lying and situated in the county of Franklin, and state of Kansas, to wit: [Description same as in trust deed from DeBoissiere to trustees.] The whole containing 3156 acres, more or less.

"To have and to hold the same, together with all and singular the tenements, hereditaments, and appurtenances, thereunto belonging or in anywise appertaining forever."

The deed was signed and acknowledged by Levi Fer-guson, as grand master, and John A. Bright, as grand secretary, and was recorded December 15, 1894.

In reply to this answer the plaintiff filed a general denial, excepting as to matters specifically admitted. The reply admitted the filing of the answer and cross-petition in the Martinelli case, as set out by defendants herein, but alleged that thereafter Troutman and Stone, as substituted plaintiffs, filed an amended petition therein, and that this plaintiff by leave of court filed a general demurrer thereto, which demurrer was sustained, judgment being thereupon rendered declaring that the plaintiffs therein had no cause of action against the defendant, this plaintiff. The reply further alleged that thereafter no proceedings were had by which this plaintiff was in anywise made or continued a party to that case. The reply also admitted the bringing of an action in 1897 against the trustees, the defendants herein and others, as alleged in the answer, but alleged that the action was dismissed by the plaintiff without prejudice. The reply also admitted the adoption of the resolution and the execution of the quitclaim deed, as alleged, but averred that it was not intended thereby to release, satisfy or renounce any claim or equitable lien which the plaintiff then had or might thereafter have in the lands described, on account of the failure of title in the trustees or for any other reason, and that the resolution and deed were for the purpose of renouncing and disavowing title to the lands and property in it as against the trustees, and for the purpose of vesting in the trustees whatever title the plaintiff had or might be held to have in the lands and property, and for the purpose of vesting the management and control of the lands and property intended for the orphans' home and school purposes in the trustees, as against it, the plaintiff. The reply also alleged that the defendants do not make claim of title from or through the trustees nor in any

Odd Fellows v. Troutman.

wise stand in privity of succession to such title with the trustees, but on the contrary claim and always have claimed title to the property adversely to the trustees and adversely to this plaintiff. In an additional reply the plaintiff said that all the moneys paid on account of the Sears claim for making improvements were contributed by the subordinate lodges and members thereof, and were paid to it as a trust fund for the purposes stated in the petition, and were so expended by it, and, if the resolution and quitclaim deed should be held to be an estoppel or waiver of its rights, then they were in contravention of the trust assumed, and were null and void.

The case was decided in favor of the defendants on their motion for judgment on the pleadings.

*B. P. Waggener, Frank Doster,* and *Waggener, Orr & Challis,* for the plaintiff in error.

*Troutman & Stone, pro se.*

The opinion of the court was delivered by

SMITH, J.: The plaintiff makes eight assignments of error, all but two of which relate to the refusal of the court to strike out portions of the answer. As the case was decided by sustaining a motion of the defendants for judgment in their favor upon the pleadings the judgment can not be affirmed unless it is the correct legal conclusion upon the undisputed facts. The facts as pleaded by the plaintiff are accepted to be true and the facts as pleaded by the defendants will be accepted only so far as they are admitted by plaintiff in its reply. Of course, the meaning and effect of written instruments admitted to have been made and executed is not matter of fact to be pleaded, but of construction by the court. Nor, of course, will propositions of law pleaded by either as to when on the facts a cause of action arose or when the statute of limitations had run be regarded as facts. As the plaintiff, presumably, did not

in reply admit as true any portions of the answer which it had previously moved to strike out, we may safely disregard the six assignments of error relating to the denial of the motion and consider only the other two, really one, to wit, that the court erred in rendering judgment for the defendants on the facts so determined.

The plaintiff, then, and DeBoissiere, for the purpose of promoting a charity, sometime previous to May 11, 1892, entered into a verbal contract by the terms of which DeBoissiere was to convey the lands in question to trustees, to be designated, for the purpose of establishing and maintaining an Odd Fellows' Orphans' Home and Industrial School Association. The plaintiff, on its part, was to pay off to one Sears an equitable lien which he had on the land, and contribute the money to erect contemplated improvements on the land and support the children in the home, for every kind of expense except teaching. This contract was to be perpetual, and was so far executed that DeBoissiere executed the deed to designated trustees and the plaintiff paid on account of the Sears claim about $20,000, and about $15,000 for the making of improvements on the land. DeBoissiere died in France in January, 1894, and left his sister, Corrinne Martinelli, as his only heir. In October, 1894, the plaintiff passed the resolution and caused to be executed the quitclaim deed copied in the statement.

The defendants contend that by this deed the plaintiff not only conveyed all the rights, legal and equitable, it had in the lands in question, but that it also repudiated its contract to "support the children in the home, for every kind of expense except teaching." The plaintiff, however, says that the instrument was intended only to convey to the trustees whatever interest, claim or title it may have acquired by the deed made by DeBoissiere and to give the trustees control of the home and school; that it was made only to settle dis-

Odd Fellows v. Troutman.

puted questions between the plaintiff and trustees, and that whatever it conveyed to the trustees does not avail the defendants, as they claim title to the land neither through the trustees nor in privity with them, but at all times have claimed title in opposition to the trustees.

It is hard to conceive how language could be framed to express more clearly the intention of the plaintiff to convey all its rights in the land, of whatever nature they might be, to the trustees, than the language here employed:

"*Resolved,* that this grand lodge hereby rescinds all former action taken in connection with or pertaining to said orphans' home.

"*Resolved,* that the grand master and the grand secretary convey by quitclaim deed under seal of this grand lodge to said corporation all interest, claim or title which it may have acquired by virtue of said deed made by Mr. DeBoissiere, or because of any action heretofore taken by this grand lodge, concerning said home."

The only action which the plaintiff pleads it had theretofore taken in reference to the land was the payment of the lien and the advancement of money for the improvements. It seems also that the following language forcibly expresses the intention of the plaintiff to bear no longer the expenses of the children in the home:

"*Resolved,* that this grand lodge does hereby renounce all claim to, interest in, control over, or connection with, said orphans' home, further than to give it its blessing."

We think this instrument, without ambiguity, assigned the rights of the plaintiff in the land and renounced all interest in, control over or connection with the orphans' home, and declared its intention no longer to contribute to the support thereof as by its contract it had undertaken to do.

Let us assume, however, for the purpose of further examining the contentions of the plaintiff that the quit-

29—80 KAN.

claim deed did not amount to an assignment of its equitable lien upon the land for the money it had expended upon the contract: In 1896, nearly two years after the execution of the quitclaim deed, Corrinne Martinelli, the sole heir of DeBoissiere, brought a suit in the district court of Franklin county for the purpose of setting aside the deed from DeBoissiere to the trustees for the land in question and to determine the rights and liabilities of all the parties in and to the land. The plaintiff, as well as the trustees, was made a defendant and summoned in the action. The plaintiff appeared and answered therein, and, in a pleading in the nature of a cross-petition, set up substantially the claim now relied upon, and asked that it be adjudged to have an equitable lien upon the land and that the land be sold to discharge the same. Thereafter the defendants herein secured a conveyance of the land in question from Corrinne Martinelli to them, and were substituted as plaintiffs in that suit in place of their grantor and filed an amended petition therein. Whereupon the defendants by leave of court filed a general demurrer to the amended petition, and the demurrer was sustained and judgment was rendered declaring that the plaintiffs therein had no cause of action against this plaintiff; and thereafter no proceedings were had by which this plaintiff was in anywise made or continued as a party to said cause. The plaintiff contends that it was no longer a party to the action.

The defendants, on the other hand, contend that the plaintiff continued to be a party in that case through all the subsequent proceedings therein, including the final judgment of the district court in favor of the defendants, the proceedings in error in the supreme court, the reversal of the judgment of the trial court, the filing of the mandate in the district court, the hearing of the motion in the suit for judgment in favor of the plaintiffs therein in accordance with the mandate, the allowance thereof, and the rendition of such judgment. The

record of the proceeding is pleaded by the defendants herein and is not traversed by the plaintiff, and appears to sustain the contention of the defendants that the plaintiff had notice of such motion and was represented by counsel at the hearing thereof and at the time of final judgment therein.

We will, however, again assume that upon the sustaining of the plaintiff's demurrer to the amended petition and the judgment thereupon rendered the plaintiff was out of the case—was no longer a party thereto, and that the final judgment therein, rendered March 23, 1893, was not an adjudication as to its claim of a lien on the land as against the defendants herein. However, we think it must be conceded that if Corrinne Martinelli had voluntarily dismissed her suit, after the filing of the plaintiff's answer, it could have proceeded therein to have its rights under its cross-petition adjudicated, even over the objections of Corrinne Martinelli and the trustees.

The defendants contend that the plaintiff's cause of action, if it had any, arose immediately upon the bringing of the suit of Corrinne Martinelli, especially as the plaintiff had by its quitclaim deed, in part at least, repudiated its contract and refused longer to contribute to the support of the orphans' home. The plaintiff, on the other hand, contends that its right to an equitable lien upon the land for money paid to discharge the Sears lien and to erect improvements on the land was contingent upon the result of the suit to set aside DeBoissiere's deed, and that its cause of action did not accrue until the final determination of that suit—March 23, 1903. It claims this although it had, in 1897, commenced an action against these defendants, the trustees and others, and set up practically the same claims here relied upon, and had thereafter dismissed the action without prejudice.

Two legal questions then remain: (1) When did the cause of action of the plaintiff for the declaration

of a lien upon the land arise? (2) If this question be not involved in the first; was the pendency of the suit to set aside the DeBoissiere deed such a contingency as suspended the plaintiff's cause of action for the lien until such suit to set aside the deed was determined?

It seems clear that at some time, if its rights had not been assigned, the plaintiff was entitled to relief and had a cause of action for the money expended by it to promote and sustain the Odd Fellows' Orphans' Home. Mr. Freeman, the annotating editor of the American State Reports, analyzes the cases in which relief is allowed against mistakes of law, dividing them into four classes. The fourth class is: "Where there is a mistake of law on both sides [of a contract], owing to which the object of the parties can not be attained." (Note to *Renard v. Clink*, 91 Mich. 1, in 30 Am. St. Rep. 460, 461, citing *Champlin v. Laytin*, 18 Wend. [N. Y.] 407, 417, *Corrigan v. Tiernay*, 100 Mo. 276, and note to Black v. Ward, 27 Mich. 191, in 15 Am. Rep. 171.) It is evident that DeBoissiere and the plaintiff thought when they entered into the contract and proceeded to the execution of the same that by their action they had organized or could organize the Odd Fellows' Orphans' Home and endow it with the lands and buildings through the medium of trustees in perpetuity. They were both mistaken as to the law, and owing to such mistake their object could not be attained. There was no fraud on either side. The mistake was mutual, and when it was discovered equity should restore to each party as nearly as possible what he contributed to the mistaken enterprise. It is also apparent that whenever either party is entitled to withdraw his contribution to the common enterprise the other party is also entitled to withdraw his contribution thereto. Is this discovery made when one party is correctly advised as to the law and brings an action to repossess himself of his contribution, or is it made when a court of com-

petent and final jurisdiction has finally determined that the law does not permit the conveyance of the real estate for the desired purpose in perpetuity and therefore that the objects of the parties can not be attained?

The plaintiff contends that its right to recover its contribution to the common purpose was contingent upon the right of the defendants, as successors in interest to DeBoissiere, to recover his contribution thereto, and although it was finally adjudicated in the suit brought by Corrinne Martinelli that the plaintiff in that suit really held the title to the land at the very time of bringing the suit, and that the DeBoissiere deed was void, yet the right of the plaintiff herein to recover its contribution to the common purpose was contingent upon the final determination of that suit, and that the statute of limitations did not begin to run against its cause of action until that suit was finally determined. Many authorities are cited by the plaintiff to sustain this contention. We have examined these authorities, and so far as they are in any way instructive they relate to cases in which the former action, a determination of which forms the contingency upon which a later action depends, involves the determination of facts upon the existence of which a cause of action in the later case depends, and such a relation exists between the parties to the two actions that the parties to the latter may rely upon the action of the parties in the former.

The contention of the plaintiff is not consistent with its answer in the Martinelli case. It then recognized that it was called upon to assert and litigate any interest it had or claimed in or to the land. It responded by setting up the same claims now involved. In effect its answer was a cross-petition asking to be reimbursed for its contributions to the original purpose which had augmented the value of the estate that Corrinne Martinelli sought to recover, and for which betterment she should repay the plaintiff if she recovered the land.

The right of the plaintiff therein and of this plaintiff, as defendant therein, depended upon the legality or illegality of the DeBoissiere deed. It was purely a question of law, and not a single authority has been suggested, nor is it believed one can be found, where it has been held that the pendency of one action, wherein the sole question is as to what law is applicable to certain facts, constitutes a contingency upon which depends the right to bring another action upon the same facts by a party not in privity with the claimant in the former action.

"A contingent claim is where the liability depends upon some future event, which may or may not happen, and which therefore makes it wholly uncertain whether there ever will be a liability." (*Adm'r of Sargent v. Adm'r of Kimball,* 37 Vt. 320, syllabus.)

(See, also, *Stevens v. Stevens,* 172 Mo. 28, 36; *Jorgenson v. Larson,* 85 Minn. 134.)

The case last cited was based upon a claim for damages against the estate of a vendor for the breach of a contract to convey land and the refusal of the widow of the vendor to convey the one-third of the land vested in her by the death of her husband, she not having signed the contract to convey. The grantee had previously brought a suit to compel the specific performance of the contract as to the one-third. After citing and approving the above definition of a contingent claim, the court said:

"Now, in this case, the plaintiff's claim against the estate of his vendor for damages for the breach of the contract to convey the land became absolute when the widow refused to convey the one-third of the land vested in her by the death of her husband. He then knew that he could not compel specific performance as to this one-third, and that his only remedy was a claim for damages against the estate. Such claim was just as absolute when the widow refused as it was when the judgment in the action for specific performance was entered. The plaintiff, however, contends that he could not know until the decision in his equitable action

whether the court would hold his acts of part per-
formance sufficient to take his contract out of the stat-
ute of frauds and make it one that could be enforced;
therefore it was contingent.   Or, in other words, he
could not know whether he could prove a valid contract
to the satisfaction of the court until it actually decided
the case.   If this makes it a contingent claim, then every
claim before judgment thereon is a contingent one, and
need not be presented to the probate court, because the
result of a lawsuit is always attended with uncertain-
ties."   (Page 137.)

The contingency upon which the plaintiff's right in
this case depended was the validity of the DeBoissiere
deed, and, paraphrasing the language of the above de-
cision, the plaintiff's claim to recover its contribution
which had been used for the betterment of the estate
became absolute when Corrinne Martinelli, the heir of
DeBoissiere, declared the deed invalid and brought suit
to set it aside.   The plaintiff herein was in no sense in
privity with either of the other parties to the former ac-
tion, but whatever claim it had was adverse to each of
the others.

We conclude, therefore, that the plaintiff's right of
action became absolute upon the bringing of the suit
by Corrinne Martinelli in 1896.   The plaintiff evidently
so understood it when it filed its answer in that action,
and also when it brought the action in 1897.

If the plaintiff, being a party to the suit brought by
Corrinne Martinelli in 1896, stood upon its cross-peti-
tion therein until the final determination thereof in
1903, it had an action pending in court, and the statute
of limitations was tolled thereby until the final deter-
mination of the action.   In such case, however, the
final judgment in the case was adverse to it and renders
the claim asserted in this action *res judicata.*   If, on
the other hand, the plaintiff, by its demurrer and the
ruling thereon, was discharged from that suit and was
no longer a party thereto, then the final judgment
therein was not an adjudication of its rights, but from
the time it was discharged from the action it had no

action pending and the running of the statute of limitations was no longer tolled. This ruling on the demurrer was more than five years before the commencement of this action, and five years is the longest limitation possibly applicable. The record before us and the conduct of the parties leaves some uncertainty whether or not the plaintiff was dismissed as a party from the former action; but, as we have seen, this can make no difference in the result herein, and the contention of the plaintiff is therefore adopted and its action is held to be barred by the statute of limitations. The judgment is affirmed.

BENSON, J., not sitting.