## MARTIN v. SPAULDING et ux.

No. 2949. Opinion Filed December 16, 1913.

(137 Pac. 882.)

1. **VENDOR AND PURCHASER—Defective Title—Rights of Vendee.** The vendee, in a contract for the sale of real estate, is not bound to take a title which is not marketable. He may, however, accept a deed and look to the vendor upon his warranty for compensation for any loss he may sustain through inability to give him a perfect title; but he also has the right to abandon the contract and refuse to make the purchase.

2. **CONTRACTS—Abandonment.** Whether a contract is abandoned is a question of fact, to be determined by the court or jury from all the facts and circumstances of the particular case.

3. **APPEAL AND ERROR—Review—Findings of Court—Conclusiveness.** Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact.

4. **SPECIFIC PERFORMANCE — Contract — Abandonment by Purchaser.** Evidence examined, and held sufficient to establish the abandonment of the contract herein involved.

5. **SAME—Election to Rescind—Conditions.** The rule that a vendor, when he elects to rescind a contract for the sale of real estate, "must restore to the other party everything of value which he has received from him under the contract" (section 986, Rev. Laws 1910) does not apply to the defendant in a suit for specific performance commenced by the vendee, where the vendor pleads an abandonment of the contract for the purpose merely of defeating the plaintiff's demand, and does not set up any affirmative equitable defense or claim any affirmative relief.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*
*R. P. de Graffenried, Judge.*

Action by Frank L. Martin against Homer B. Spaulding and wife. Judgment for defendants, and plaintiff brings error. Affirmed.

*A. A. Davidson, Kline & Gotwals,* and *Geo. S. Ramsey,* for plaintiff in error.

*Bailey, Wyand & Moon,* for defendants in error.

KANE, J.  This was a suit for specific performance of a contract concerning real estate, commenced by the plaintiff in error, plaintiff below, against the defendants in error, defendants below.  Upon trial to the court, there was a general finding and decree in favor of the defendants, to reverse which this proceeding in error was commenced.  It seems that the defendants, who were the owners of the real estate involved, entered into a written contract with the plaintiff, whereby, in consideration of $1,900, to be paid by the plaintiff as follows: $50 cash in hand; $50 on the 4th day of February, 1905, and the balance on or before the 4th day of March, 1905—the defendants agree to execute and deliver to the plaintiff a good and sufficient warranty deed to said premises, the same to be free from all incumbrances whatsoever.  For the purpose of this case, we may assume that the contract was fully performed up to the said 4th day of February, 1905.  Upon that date, it is agreed, the defendants were unable to furnish a marketable title to the land on account of the pendency of what is known as the "Haskell suit," wherein the title thereto was involved.  On the last-mentioned date the parties to the contract met by agreement at the City National Bank, and as to what transpired there, the defendant Homer B. Spaulding testified as follows:

"I went in there [into the bank] with him, and Mr. Hogan came to the window with a sack of money, and said: 'I have some money here for you,' and Mr. Martin said, 'We want to tender you the money for these lots over there,' and I said, 'All right; I am willing to make you a deed to the lots and take your money,' and he said: 'But you can't make a good deed.  Your deed would not be any good, because Mr. Haskell has a suit'—and I said I did not think it would amount to anything, and I would make a bond to fix the title, and he walked to the desk

and had a little talk, and he said he would see me about it, and some time after that I went to see him about it. Q. What kind of a proposition did you make him about the bond? A. Told him I would make a bond, and give Walter Howard, and put my home place on it. Q. What was your home place worth? A. Ten or fifteen thousand dollars. Q. What did he finally decide to do? A. That was about all and I met him again after that, and he asked me what kind of terms I would give him on the two lots if he accepted the bond title. Q. The same lots? A. Yes, sir; and I said, if he would pay $500 cash, I would sell him the lots for that and make the balance due in six and twelve and eighteen months each, and he said he would see me about that. Q. How long was that after the transaction in the bank? A. Not very long; possibly a week or maybe a month. Q. Proceed. A. He seemed to think that would suit him, and the last talk I had, he said he would figure on it and if I would let him pay $200 cash and divide the balance in six and twelve and eighteen months, he would figure on it, and I told him that would not do me any good. Q. When was this conversation? A. It all happened in about a few months. Q. Did you have any other conversation in regard to the matter? A. No, sir."

In April, 1905, H. B. Spaulding sold the lots in controversy to his wife, Josie C. Spaulding. On the 6th day of February, 1909, nearly four years after the tender, the plaintiff commenced this suit. On the 30th day of October, 1909, prior to the trial of this cause, the "Haskell suit" was finally settled and dismissed, and the defendants were then able to convey a clear title to the plaintiff.

The only question in the case of any seriousness is whether the evidence adduced at the trial reasonably tends to show that when it became apparent that the defendants could not perform the contract according to its terms and tenor, the plaintiff abandoned the same. The court below found there was an abandonment of the contract; and under the oft-repeated rule, if there is any evidence reasonably tending to support the findings of the court below, they will not be disturbed.

"Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed

questions of fact." (*McCann v. McCann,* 24 Okla. 264, 103 Pac. 694. *Wat-tah-noh-zhe et al. v. Moore,* 36 Okla. 631, 129 Pac. 877.)

It is well settled that a vendee in a contract for sale is not bound to take a title which is not marketable. The plaintiff herein doubtless had a right to accept the deed at the time he tendered the balance of the purchase price and look to the defendants upon their warranty for compensation for any loss he might sustain through their inability to give him a perfect title; but he also had a right to refuse to make the purchase upon the same ground. *Riley v. Allen,* 71 Kan. 625, 81 Pac. 186; *Milmoe v. Murphy,* 65 N. J. Eq. 767; 56 Atl. 292; *Bennet v. Giles,* 220 Ill. 393, 77 N. E. 214; *Peters v. Van Horn,* 37 Wash. 550, 79 Pac. 1110.

In *Riley v. Allen, supra,* Mr. Justice Mason, in discussing the rights of the parties, in circumstances somewhat similar, says:

"Assuming that a valid contract had been made for the conveyance of the land, without reservation, the plaintiff doubtless had a right to accept the deed and look to the defendant upon her warranty for compensation for any loss he might sustain through not being able to obtain immediate possession, or he might have demanded an abatement in the purchase price in an amount suitable for that purpose; but he also had a right to refuse to make the purchase at all, owing to the defendant's inability to carry out his part of the contract. In refusing with a full knowledge of the facts to accept the only title it was possible for the defendant to convey, he in effect elected to avail himself of the right to decline to carry out the agreement, and thereby abandoned the right to require such performance as the defendant was able to make, with compensation, and could not be restored to it by a change of policy, made upon reconsideration of the matter after the deed had been withdrawn from the bank. A mere delay for a reasonable time to complete the transaction pending negotiations for an adjustment of the difference that had arisen would not have had this effect, but the finding of the court means more than this. It fairly implies a definite and final refusal on the part of the plaintiff to accept anything less than the very thing contracted for—a full and absolute title."

Counsel for plaintiff in error attempt to distinguish the Riley case from the case at bar, but we believe it is very strongly in point. The principal points of difference between the two cases

relied upon by counsel are:   (1) In the Riley case the plaintiff was not in position to pay the consideration and accept the title, assigning as reason therefor that the defendant was not in a position to make a clear title, whilst in the case at bar the plaintiff went to the defendants and made a tender of the money, coupling his tender with a demand for a clear title to the property.   (2) In the Riley case the contract was wholly executory, while in the case at bar it had been partially performed.

Of the first proposition they say:

"The only evidence of abandonment is the alleged refusal of Martin to take the defective title, which refusal, to have any effect at all, would have to be considered as independent of the act accompanying it, viz., the tender of $1,800 and the declared purpose of Martin in making it.   His declaration of this purpose destroyed the effect of the refusal as an act of abandonment."

We cannot agree with counsel on either proposition.   The positive refusal on the part of Martin to accept anything different from his contract, his subsequent conduct in negotiating for a purchase of the property upon a different basis, and the long time he allowed to transpire before commencing his suit for specific performance, were facts from which an intention to abandon the original contract might reasonably be inferred.   Whilst the tender may be entitled to some weight as an evidential fact, tending to establish an intention to rely upon the original contract, it was only a circumstance to be weighed by the court as any other testimony.   This court is of the opinion that the evidence of the tender is not entitled to the weight counsel seek to attach to it. At the time Martin made the tender, he knew that the title to the land was involved in the "Haskell suit," and that he would not accept such title as it was possible for the defendants to convey.   Under such circumstances, the tender was a vain and useless act, and to our mind not at all indicative of a desire on the part of the plaintiff to acquire title to the property, especially in the face of his failure to accept the same upon the very fair and more advantageous terms offered by the defendants.

Of the second proposition, counsel say:

"This cause is distinguished from the Riley case, and other cases cited, by the fact that part payment of the contract price

was made   *   *   *   which has never been returned to the plaintiff by the defendant."

This was also a circumstance, tending to show the intentions of the parties to be weighed by the court as other evidence. Counsel for the plaintiff contend that defendants' failure to return, or offer to return, the money paid is not only evidence that Spaulding did not consider their contract rescinded, but also precludes the defendants from rescinding the contract, or treating it as rescinded, and cite in support of the latter proposition section 393, Pomeroy on Contracts, as follows:

"American cases hold that the vendor must also, when he elects to rescind the contract on this account (meaning failure of the purchaser to pay), repay or tender the purchase money received, and return the collateral securities given to him by the vendee."

In the case at bar, however, the defendants are not praying for affirmative relief. In note 4 to section 393, 1 Pomeroy on Equity Jurisprudence (3d Ed.), it is said that the principle invoked by counsel "applies to a defendant who sets up an affirmative equitable defense, claiming some affirmative relief, since he is then in exactly the same position as a plaintiff. See *Tongue v. Nutwell,* 31 Md. 302. This must be the true limitation of the principle in its application to defendants; it certainly does not and cannot apply to defendants generally, who merely seek to defeat the plaintiff's demand, and ask no affirmative relief for themselves, either directly or indirectly."

On the third proposition, counsel seem to admit that delay in bringing a suit, if unexplained, amounts to evidence of a prior abandonment; but they say the delay in bringing suit has no effect, because it is fully explained, and was due to the fault of the defendants, to wit, their inability to convey the title contracted for. To our mind, the only significance that can be attached to the action of the plaintiff in bringing this suit at the time he did is that he had changed his mind, and was then willing to accept a title that he had rejected some four years before. His suit was not really a suit for specific performance. The contract could be no more specifically performed at that time than it could have been on the date the contract by its terms was

to be performed. The "Haskell suit" was still pending, and the commencement of the suit by the plaintiff was tantamount to saying: "I am willing now to accept such title as it is possible for the defendants to convey." Specific performance was still impossible. We believe there is ample evidence in the record tending to establish the abandonment of the contract by the plaintiff, and to support the general finding of the court below in favor of the defendants.

The judgment of the court below is therefore affirmed.

All the Justices concur.