## BEATTY v. WINTRODE LAND CO. *et al.*

No. 3289.    Opinion Filed February 15, 1916.

(155 Pac. 574.)

1. **SPECIFIC PERFORMANCE—Judgment—Impossibility of Performance—Innocent Purchaser.** A judgment for defendant in an action for specific performance based on a finding of fact, among others, that defendant had conveyed the property to an innocent purchaser for value cannot be reversed, as specific performance is impossible where the party to the contract has conveyed the property to one who is free from equities.

2. **VENDOR AND PURCHASER—Remedy of Purchaser—Recovery of Money Paid.** Where a vendee pays money in part performance of an executory contract of sale and fails to perform it, he cannot recover of the vendor the money so paid.

3. **SPECIFIC PERFORMANCE—Rescission by Vendor—Restoration of Property Received.** The rule that a vendor, who elects to rescind a contract for the sale of real property, "must restore to the other party everything of value which he has received from him under the contract" (section 986, Rev. Laws 1910)), does not apply to the defendant in a suit for specific performance commenced by the vendee, where the vendor pleads an abandonment of the contract for the purpose merely of defeating the plaintiff's demands, and does not set up any affirmative equitable defense or claim any affirmative relief.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*

*Geo. W. Clark, Judge.*

Action by Reba F. Beatty against the Wintrode Land Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*C. W. Stringer,* for plaintiff in error.

*Ames, Chambers, Lowe & Richardson,* for defendants in error.

TURNER, J. On January 10, 1910, in the district court of Oklahoma county, Reba F. Beatty, plaintiff in error, sued the Wintrode Land Company, Pryor-Wagnon-Hitt-Gardner Company, and the American National Bank in specific performance, the object of which was to compel the conveyance to her of lots 1 to 6, inclusive, of block 12, Walnut Grove addition to Oklahoma City, and to clear her title thereto. Thereafter she filed an amended petition, and added another cause of action, and prayed in the alternative that in the event she could not recover in specific performance, she then have judgment for $300 and interest, which, she alleges, was part of the consideration paid for the land. After the Wintrode Land Company and the bank had answered, in effect a general denial, and the Gardner Company had demurred, and one Dougherty, who was alleged to claim some interest in the land, had come in and answered that he was an innocent purchaser for value and without notice, the court sustained the demurrer of the Gardner Company to the petition, and that company passed out of the case. On October 3, 1910, plaintiff filed a second amended petition, in effect the same thing, and upon which substantially the same issues were joined by the remaining defendants. Thereupon there was trial to the court, and judgment in favor of the Wintrode Land Company and the bank, and

against the plaintiff for costs, and she brings the case here.

At the conclusion of the testimony the court, on request of the parties, made special findings of fact and conclusions of law, thus:

"On December 5, 1906, Pryor-Wagnon-Hitt-Gardner Company, Incorporated, as authorized agents of the Wintrode Land Company, accepted from plaintiff $300 in cash and her promissory note for $250 of that date, bearing 8 per cent. interest, payable to the defendant Wintrode Land Company on or before 12 months after date, in consideration of which they verbally agreed with her to procure the execution, by the Wintrode Land Company, of a warranty deed conveying to her lots 1 to 6 in block 12, Walnut Grove addition to Oklahoma City, and to deposit such deed and an abstract of title to said lots, together with said note, in the American National Bank, to be delivered to plaintiff upon payment of said note when it became due. Nothing, however, was said by either as to whether time should be the essence of that contract.

"Pryor-Wagnon-Hitt-Gardner Company, Incorporated, delivered a portion of this cash deposit and said note to the Wintrode Land Company, whereupon the latter executed the warranty deed and deposited the same with the abstract and note in the American National Bank, pursuant to, and in accordance with, the agreement mentioned.

"In May, 1909, 17 months after the maturity of the note, and 11 months after the written notice to the plaintiff of its intention to declare her contract forfeited, unless a substantial payment should be made on it, the Wintrode Land Company, after having made repeated efforts to dispose of these lots, verbally sold them to the defendant Pryor-Wagnon-Hitt-Gardner Company, Incorporated, for the balance due on the Beatty contract, which was the best price they could get for them, taking a note for the purchase price and retaining title to the lots until pay-

ment should be made, with a verbal agreement that when the note was paid it would convey the lots to any one that Pryor-Wagnon-Hitt-Gardner Company, Incorporated, desired. This note was paid long ago. These lots had been flooded by an overflow from the river, and there was, at that time, practically no sale for them.

"Prior to the transaction last named, the defendant Dougherty deposited with the defendant Pryor-Wagnon-Hitt-Gardner Company, Incorporated, money to be invested by them, and also listed with them his real estate for sale and reinvestment of the proceeds in other real estate, with authority to exercise their own judgment in handling his funds and real estate, and in making new investments, and they turned these lots, with ten others, over to him for a consideration of $2,000.

"Since the date of the contract sued on, there have been many fluctuations in price. After the new packing plant was located it was rumored that a terminal building would be erected on this addition, and there was quite a demand for property in that locality. Prices advanced materially and these lots became more valuable than they were when the contract sued on was made. Such was the situation on January 10, 1910.

"On the date last named, the plaintiff offered to pay the note she had given the Wintrode Land Company, but was told by them that they would not accept it; and on the same day, but whether before or after such offer was made the record is silent, the Wintrode Land Company deeded these lots to defendant Dougherty, which deed was filed for record on the 12th day of January, 1910. Said 10th day of January, 1910, this suit was brought against the Wintrode Land Company, Pryor-Wagnon-Hitt-Gardner Company, Incorporated, and the American National Bank, but the summons was not served until three days thereafter. Whether the Wintrode Land Company had knowledge of the institution of this suit before they executed the deed to Dougherty does not appear in the record. Dougherty had no knowledge or information at

the time the deed was executed, that the plaintiff had or claimed any interest in these lots. No part of the $300 cash payment has been refunded, nor has the $350 note been surrendered to the plaintiff, although the evidence shows that it has not been transferred, but was marked forfeited May 17, 1909.

"The relief sought by this action is the delivery of the deed and abstract to the plaintiff upon payment, by her, of the note and the accrued interest, and quieting title to the lots in her, or, if such relief cannot be afforded, that she recover judgment against the land company for the cash payment made by her, with interest thereon.

### "Conclusions of Law.

"Although time was not specifically made the essence of this contract of sale, the absence of some showing that would excuse the failure to meet the deferred payment within a reasonable time after it matured would entitle the vendor to the same rights that it would have enjoyed had time been declared to be the essence of the contract; and in the absence of grounds for equitable relief, the plaintiff's remedy is in a court of law.

"No excuse being afforded for not complying with the terms of the contract, the fluctuation in the value of the property during the three years following its purchase, the failure of the plaintiff to respond to the vendor's notice, given seven months after default, of its intention to declare the contract forfeited, unless a substantial payment should be made thereon, the vendor's cancellation of the note and sale of the property to another seventeen months after such default for the balance due upon the note, that being the best price that could be obtained for them, the want of evidence that the property was of greater value than the price for which they then sold, and a further delay of eight months before offering to pay the note and receive the deed and abstract, during which time the property increased in value, justified the belief that prior to the sale of the property to the de-

fendant Pryor-Wagnon-Hitt-Gardner Company the plain-·
tiff had entirely abandoned her contract and forfeited any
rights which she, theretofore, had under it, and she is
entitled to neither a decree of specific performance, nor a
return of the payment made under that contract.

"The defendants should have judgment herein for
their costs.

"OKLAHOMA CITY, OKLAHOMA, May 9, 1911.
"GEO. W. CLARK, *District Judge.*"

Assuming the contract sought to be specifically en-
forced was in form sufficient to satisfy the statute (Wil-
son's Stat. Okla. 1903, sec. 780, Rev. Laws 1910, sec. 941),
or that the case was taken out of the statute by part
performance, which nowise seems to be questioned, the
court did not err in declaring the law from the facts
found, as contended by plaintiff. When the court found,
as he did, that in May, 1909, 17 months after the ma-
turity of the note and 11 months after the written notice
of defendant of its intention to declare her contract for-
feited, unless the note was paid at least in part, the Win-
trode Land Company sold the lots to the Gardner Com-·
pany, which in turn sold them to Dougherty, with ten
others, for $2,000, and took a deed therefor from the
land company the day this suit was brought, and that
Dougherty had no knowledge or information at the time
the deed was executed that plaintiff had or claimed an in-
terested in these lots, he, in effect, found and, in effect, de-
creed that Dougherty was an innocent purchaser for value
and without notice, and that specific performance would
not lie. In this the court was right. In *Halsell v. Ren-
frow*, 202 U. S. 287, 26 Sup. Ct. 610, 50 L. Ed. 1032, 6
Ann. Cas. 189, the situation was substantially as here.
In holding that the trial court was right in refusing to
decree specific performance, the court said:

"It appears from the petition that after the defendant Renfrow, who was the owner of the land, had broken off his dealings with the plaintiffs, he conveyed the premises to the defendant Edwards. In Edwards' answer it is alleged that he purchased for value and without notice. The answer of Renfrow, though less specific, is to like effect. This was one of the issues in the cause which were found for the defendants, as upon the evidence it well might be. Therefore it is not necessary to go further in order to show that the judgment cannot be reversed. For, of course, specific performance is impossible where the party to the contract has sold the property to one who is free from all equities."

And so we might stop here and affirm the judgment of the trial court, and would, were it not further contended that the court erred in refusing to decree plaintiff, on the facts found, a return of the $300 paid by her as part of the purchase price. Not so. We have otherwise held. In *Helm v. Rone*, 43 Okla. 137, 141 Pac. 678, the facts were that on July 5, 1907, the defendant in error was the owner of certain real estate in Oklahoma City, and that day entered into a written contract with plaintiff in error to sell the same, as here. She paid $1,000 on the purchase price, and agreed to pay $2,775 one year thereafter, the deed to be put in escrow and delivered to her when the payment was made. The contract provided that time was of the essence of the contract. Pursuant thereto she took possession of the property and collected the rents, but failed to make the deferred payments as agreed. Thereafter defendant took possession of the property and sold it to another, whereupon plaintiff sued to recover the $1,000 paid, as stated. As here, defendant was, up to the time of the breach, ready, willing, and able to perform his part of the contract. The trial court held that she was

not entitled to recover, and the judgment was affirmed. There we said:

"The rule is, without exception, that where a party advances money in part performance of an executory contract of sale, and afterwards breaches his contract, he cannot recover the money paid."

Quoting approvingly from *Hansbrough v. Peck*, 72 U. S. (5 Wall.) 497, 18 L. Ed. 520, where the material facts are substantially the same as here, we said:

"And no rule in respect to the contract is better settled than this: That the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, and the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done. *Green v. Green*, 9 Cow. (N. Y.) 46; *Ketchum v. Evertson*, 13 Johns. (N. Y.) 359, 7 Am. Dec. 384; *Leonard v. Morgan*, 6 Gray (Mass.) 412; *Haynes v. Hart*, 42 Barb. (N. Y.) 58. The same doctrine has been repeatedly applied by the courts of Illinois—the state in which this case arose. *Chrisman v. Miller*, 21 Ill. 227, and cases referred to in the argument."

This case was followed in *Snyder v. Johnson*, 44 Okla. 388, 144 Pac. 1035, an opinion by Rittenhouse, C. There in the syllabus we said:

"Where a vendee contracts to purchase certain real estate, and, after paying a part of the purchase price, makes default, he cannot maintain an action to recover the money so paid."

Rev. Laws 1910, sec. 986, has no application here, as contended by plaintiff, for the reason that this is not a case of rescission, but one of abandonment of a contract. Such is the finding of the court, and the same is not ques-

tioned, and, if it were, there being evidence reasonably tending to support the finding of the court, the same must stand. Being a case of abandonment, *Martin v. Spaulding et ux.*, 40 Okla. 191, 137 Pac. 882, rules the case on the point involved. There in the syllabus we said:

"The rule that a vendor, when he elects to rescind a contract for the sale of real estate, 'must restore to the other party everything of value which he has received from him under the contract' (section 986, Rev. Laws 1910) does not apply to the defendant in a suit for specific performance commenced by the vendee, where the vendor pleads an abandonment of the contract for the purpose merely of defeating the plaintiff's demand, and does not set up any affirmative equitable defense or claim any affirmative relief."

We are therefore of opinion that the judgment must be affirmed, and, as there is no merit in the remaining contentions of plaintiff, it is so ordered.

All the Justices concur.