## BOGGS et al. v. McCASLAND.

No. 16381—Opinion Filed March 16, 1926.

1. **Oil and Gas—Breach of Contract by Grantor—Nonliability of Grantee for Balance of Purchase Price.**

Where M. purchased a one-half interest in the oil and gas and other minerals under a certain plot of ground, and pays $500 cash and agrees to pay $500 more out of the first oil taken from said land, and the deed contains a stipulation that the land adjoining this property, being a cemetery, should not be leased or drilled for oil and gas, and the lessor, after selling an interest in the oil and gas rights, leases the cemetery for oil and gas purposes, and wells are drilled thereon, such action on the part of the lessor constitutes a breach of contract, and the lessor cannot recover the balance of the purchase price.

2. **Appeal and Error—Review — Sufficiency of Evidence.**

Where a jury is waived, and a case is submitted to the court, the judgment of the court will not be disturbed, if the evidence reasonably tends to support its judgment.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by S. B. Boggs, W. F. Palmer, and J. D. Walton, trustee of Oak Grove Methodist Church, South, Stephens County, Okla., sometimes called Willow Point Church, against T. H. McCasland. Judgment for plaintiffs, and they appeal. Affirmed.

Sandlin & Winans, for plaintiffs in error.

Womack, Brown & Cund, for defendant in error.

Opinion by MAXEY, C. This action was commenced by the plaintiffs, as trustees of Oak Grove Methodist Church of Stephens county, Okla., against the defendant, T. H. McCasland, for the recovery of $360.09, with interest, as a part of the purchase price of certain mineral rights, which were sold by the church to the defendant, and which were to be paid for by said defendant from the production of the first oil produced from said land by the defendant. The deed from the plaintiffs, trustees, was executed on the 11th day of November, 1920, whereby the trustees of said church conveyed to the defendant, McCasland, an undivided one-half interest in the oil, gas, coal and mineral rights under the following tract of land, to wit:

"One acre, more or less, commencing 177 yards from the northwest corner of section 3, township 2 south, range 8 west, and running 88 yards south; thence east 68 yards, thence north 88 yards, thence west to the place of beginning 68 yards; and

"One acre of land situated in the northeast corner of the northeast quarter of section 4, township 2 south, range 8 west, being the south one-third of a strip of land 68 yards wide, east and west, and 265 yards long, north and south, and containing two acres, more or less, of which said church was then the owner, and of which property the legal title has been, at all times mentioned herein, vested in the trustees of said church for the use and benefit of said church."

That as a consideration for said deed, McCasland was to pay $1,000 out of his interest in the first oil produced from said land. McCasland received one-half of 1-16th of oil produced on said land in the sum of $360.09, and refused to pay the other, because the plaintiffs had violated the terms of their contract by permitting what is known as the cemetery or graveyard to be drilled on. Said contract had the following provisi n in it:

"It is further agreed by the parties hereto that said lessor therein will not grant, demise, lease or let for the purpose of mining and operating for oil and gas that tract of land now in use as a graveyard, and more particularly described as follows: The north two-thirds of a strip of land 68 yards wide east and west, and 265 yards long north and south, and situated in the northeast corner of the northeast quarter of section 4, township 2 south, range 8 west."

It seems that, notwithstanding the above provisions in the contract made with McCasland at the time he purchased an interest in the oil and gas, the trustees of said tract of land used as a graveyard executed another lease on the part used as a graveyard, and

permitted wells to be drilled thereon. It is the contention of McCasland, the defendant, that permitting wells to be drilled on the graveyard would drain the part of the property that he had bought an interest in, and he would be damaged thereby.

The case was tried by the court without the intervention of a jury, and a number of witnesses were introduced by the defendant, who were more or less experienced in producing oil, and they testified that in their judgment wells on the graveyard property would drain the oil from the part that Mc-Casland was interested in. The defendant also produced a geologist as an expert. He was a graduate of the University of Oklahoma and had had experience in the oil field ever since he left college, and he testified that wells drilled on the graveyard property would drain the property that McCasland was interested in, but he could not tell just how much. None of the witnesses was able to say just how much the McCasland property would be drained, but the court, in its judgment, said that, while it could not determine from the evidence just how much drainage there was, the plaintiffs, trustees, had breached their contract with McCasland by leasing and drilling the graveyard property for oil, and the court found that McCasland had received $716.09 from the land mentioned in his deed, and that he had paid $500 cash consideration to said church, and that deducting the $500 cash from the $716.-09 would leave $216.09, and it held that the $216.09 should be divided between McCasland and the church, and rendered judgment against McCasland for $108.04, and the plaintiffs, trustees, have appealed said case to this court.

We have examined the records in this case, the testimony of the witnesses, and other documentary testimony, and after giving all of the testimony due consideration, we are of the opinion that the trial court worked out a very equitable solution of the controversy. The plaintiffs, trustees, agreed not to lease the graveyard or permit it to be drilled upon for oil or gas. This of itself is a breach of their contract with McCasland, and he was entitled to recover for such breach.

A case very similar to this case was before this court on February 5, 1924, and reported in 101 Okla. 56, 223 Pac. 880. The case is that of Charles E. Knox Oil Co. v. McKee et al. In that case the controversy arose over the trustees of the church leasing the cemetery or graveyard belonging to the church to McKee for the purpose of drilling for oil and gas. Some of the persons having members of their families buried in said cemetery filed an application for an injunction to enjoin McKee from drilling for oil and gas on said cemetery. An injunction was granted by the trial court, and the case appealed to this court, and this court in an opinion by Judge Cochran held that the injunction was properly granted. It seems to be against public policy to permit parties to drill for oil and gas in a cemetery, and it was largely on this theory that the injunction was granted in the Knox Oil Company Case. Under the holding in that case, an injunction would lie in this case to enjoin the drilling for oil in the cemetery. But this case comes up on another question, and after a consideration of the whole case, we think the trial court reached a proper conclusion, and its judgment is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 743 (Anno). (2) 4 C., J. p. 879 § 2853; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. 90; 5 R. C. L. Supp. p. 79.