## CAMPBELL v. JOHNSON.

No. 17387. Opinion Filed March 20, 1928.

Rehearing Denied May 29, 1928.

(Syllabus.)

1. **Appeal and Error—Extension of Time for Case-Made—Powers of Assigned District Judge.**

A district judge, duly assigned to hold a term of court in a certain designated county and district by order of the Chief Justice under the provisions of section 9, art. 7, of the Constitution, that part "whenever the public business shall require it, the Chief Justice may appoint any district judge of the state to hold court in any district, and two or more districts judges may sit in any district separate at the same time," may and has the power, under and by virtue of such order, within the time period specified in the order, and while within such designated district, whether within the particular county or not, to make and enter an order extending the time in which to make and serve a case-made in a cause originating in such designated county to the same extent and manner as the regularly elected resident judge of such district.

2. **Appeal and Error—Questions of Fact—Conclusiveness of Finding of Court Where Jury Waived.**

If, upon the trial of an issue of fact, a jury is waived, and the cause submitted to the court, a finding of fact made by the trial court upon conflicting testimony will not be reversed upon appeal if the testimony reasonably tends to support the judgment of the court. Dustin Gro. & Feed Co. v. Lucas, 91 Okla. 11, 215 Pac. 417.

3. **Same—Review of Evidence in Equity Case.**

The Supreme Court will weigh the evidence in a case of purely equitable cognizance, but will not reverse the same unless it be clearly against the weight of the evidence. Anderson v. Moore, 118 Okla. 242, 247 Pac. 391.

4. **Same—Question of Rescission or Abandonment of Contract.**

Whether a contract is rescinded or abandoned is ordinarily a question of fact to be determined by the court or jury from all the facts and circumstances of the particular case, and where the trial court has found, as in the case at bar, that the parties rescinded and abandoned the original transaction, such finding and judgment will not be reversed if the testimony reasonably tends to support the judgment, or, in a case of purely equitable cognizance, unless it be clearly against the weight of the evidence.

5. **Same—Judgment Sustained.**

Record examined, and held, to support the findings and judgment of the trial court.

Commissioners' Opinion, Division No. 1.

Error from District Court, Seminole County; Hal Johnson, Judge.

Action by D. Campbell against J. Coody Johnson to recover monies had and received by defendant upon the execution of quitclaim deed by him to lands previously deeded

to plaintiff, and to declare a trust. Judgment for defendant, and plaintiff appeals. Affirmed.

Diamond & Orr and Orr & Woodford, for plaintiff in error.

C. Guy Cutlip and Thos. J. Horsley, for defendant in error.

LEACH, C. This action originated in the district court of Seminole county, Okla., by D. Campbell, as plaintiff, against J. Coody Johnson et al., as defendants, and as the parties bear the same relation to the case in this court as they did in the lower court, they will be referred to herein as plaintiff and defendants.

Plaintiff filed his petition in this case on July 19, 1924, in which he alleged, in substance, that, on the 16th day of October, 1917, he purchased from the defendant 160 acres of land in Hughes county, Okla., for a consideration of $3,500; that the defendant, joined by his wife, made, executed and delivered to plaintiff his warranty deed, conveying to him the land in question, a copy of which deed was attached to plaintiff's petition; that on the date of sale and purchase plaintiff paid to defendant the sum of $500, and agreed to pay the balance of the purchase price, $3,000, upon delivery of possession of the land to plaintiff; that the defendant J. Coody Johnson fraudulently, and with the purpose to cheat and defraud, induced plaintiff to keep his deed off the records of Hughes county, and agreed to place plaintiff in possession of the land. Thereafter, defendant Johnson informed plaintiff that there was certain litigation pending involving the land conveyed, and that he, Johnson, would prosecute the same for the benefit of plaintiff, and again instructed plaintiff to withhold from the record the deed; that plaintiff relied upon the defendant Johnson and his statements that he would prosecute the litigation for the benefit of plaintiff; that the defendant Johnson became the trustee and agent of plaintiff, and the record claimant to the legal title, subject to the trust in favor of plaintiff who was the beneficial owner of the land; that notwithstanding such facts defendant Johnson did, on the 8th day of December, 1922, make, execute and deliver to one Mary Thompson his quitclaim deed, conveying to the said Mary Thompson all of said described land, which quitclaim deed was filed for record in the office of the court clerk of Hughes county on the 18th day of December, 1922; that said quitclaim deed was made in violation of the trust and without the knowledge and consent of plaintiff, contrary to his rights, and was made by defendant Johnson to cheat and defraud plaintiff.

That thereafter the said Mary Thompson made, executed and delivered to others, naming them, certain deeds and conveyances affecting the title to said lands, all of which later conveyances and instruments were duly filed for record, and so far as known to plaintiff were taken by the grantees therein without knowledge of the claim of said plaintiff in and to said land; that by virtue of said conveyances the legal title of plaintiff in and to said land was and is extinguished, as was intended by the said Johnson; that all of said instruments and conveyances were made without the knowledge and consent and against the will of plaintiff and contrary to his rights; that defendant Johnson by the execution of the quitclaim deed to Mary Thompson, received large sums of money, the exact amounts of which are to plaintiff unknown, but that he verily believes and alleges that the said Johnson was to receive for such quitclaim deed $2,500 in cash and one-half of the oil and gas lease in and upon said lands; that said defendant Johnson received, or is to receive, from the other defendant $13,500 for the assignment of his one-half interest in and to the oil and gas lease; that the defendant Johnson, by the facts and agreements set out in plaintiff's petition, was the agent and trustee of plaintiff and was charged with the duty of paying over and delivering to plaintiff said sums of money, and was to account to plaintiff for the sale of said lands, but that said defendant Johnson failed, refused and neglected to report to plaintiff any and all said transactions or to account to plaintiff for the same, and had converted and is converting all of said sums to his own use and benefit contrary to the rights of plaintiff; that said defendant has damaged plaintiff in the sum of $16,000, less $3 000 balance of the purchase price, or in the total sum of $13,000; that the other defendants in said action have in their possession certain sums of money, oil and credits, the amount and character of which is to the plaintiff unknown, which they are about to pay over and deliver to the defendant Johnson; that if they should do so, it would greatly injure and damage plaintiff, and that they should be required to answer for all sums of money, credits and oil heretofore paid or yet due defendant Johnson; that defendant Johnson had and has no legal or beneficial interest in said land; that he has procured, as aforesaid, by fraud, said sums of money which he owes and is legally bound to pay over to plaintiff, and to account there-

for, and plaintiff prayed an accounting from defendant, and that he recover judgment against defendant Johnson for the sum of $13,000, and such other sums as the court may find due from defendant to plaintiff.

Thereafter defendant Johnson filed his separate answer and cross-petition in which he alleged and stated in substance: A general denial of each and every material allegation of plaintiff's petition; admitted the execution of the deed alleged, but denied the same was a conveyance or recognized as a conveyance of the lands described; admitted there was litigation pending on said land in Hughes county; specifically denied he ever requested the plaintiff to withhold the deed from record; that plaintiff knew said deed was not intended as a conveyance of the land, and that plaintiff received and kept the same from record for his own benefit; denied there was any trust imposed in connection with said lands, or that he held the same in trust for plaintiff, or any other persons; admitted he made quitclaim deed to Mary Thompson of all his interest in said land, but denied he conveyed the same for the plaintiff, or that he violated any trust in so doing; stated the facts to be that plaintiff knew of said action on his part and consented thereto; admitted the execution and assignment of certain oil and gas leases by himself to others, and says that the conveyance of said lands to Mary Thompson and the said leases mentioned were not a fraud or device on the part of defendant to cheat plaintiff or deprive him of any rights, but all of said acts on the part of defendant were known to plaintiff and were consented to by him. Defendant further alleged that plaintiff never at any time had any interest in said lands; defendant admitted he received $2,500 and other sums as alleged and set forth in plaintiff's petition; admitted he never reported such things to the plaintiff for the reason plaintiff had no interest in said lands, leases or anything connected therewith; denied that he damaged the plaintiff in any sum whatever.

Defendant further answering states that, on the 3rd day of March, 1924, in the district court of Seminole county, in an action brought in said court by the Security State Bank, a corporation, against D. Campbell, No. 6188, in which suit the said Campbell filed a motion asking that defendant herein, Johnson, be made a party defendant, and in which motion the said Johnson intervened, filed his answer, and judgment was rendered in favor of plaintiff and against D. Campbell,

and in favor of D. Campbell against this defendant Johnson, and all the matters, rights and controversies set forth in the petition herein were fully and finally adjudicated and settled; that in said cause No. 6188 plaintiff bank alleged the said D. Campbell to be indebted to it in the sum of $3,816; that the said D. Campbell filed an answer in said cause admitting the execution of the note sued upon, and alleged that said note sued upon in said cause was without consideration and void for the reason that at the time of the execution and delivery thereof, one J. Coody Johnson was indebted to plaintiff bank in a sum greatly in excess of $5,000, and for the purpose of reducing said indebtedness plaintiff procured the said J. Coody Johnson to convey to the defendant Campbell certain lands (being the lands involved in this action), and procured the defendant in said cause, Campbell, to execute and deliver to the bank the note sued upon, upon the express contract and agreement then and there made and had between said bank, J. Coody Johnson and Campbell; that in the event the said J. Coody Johnson was not the owner of the full fee simple title to such lands, or if title to said lands failed for any reason, the defendant was not to be held liable on said note for any sum or amounts whatsoever, and further alleged that the said Johnson was not the owner of the full fee simple and marketable title to said lands, and that the title thereto had wholly failed and for such reason the consideration of the said note was illegal and void; that thereafter, plaintiff in this case, defendant in that case, Campbell, filed his supplement to the said answer in which he alleged that as heretofore pleaded, "the said indebtedness was not the indebtedness of said defendant, but the indebtedness of J. Coody Johnson, all of which was well understood between the parties, and that the said indebtedness of J. Coody Johnson was in the name of this defendant and the note signed by this defendant for the accommodation and convenience of the said J. Coody Johnson, and for the accommodation and convenience of the plaintiff, and as a cover for extending to the said J. Coody Johnson credit in an amount beyond that allowed by the banking laws of the state of Oklahoma, and prayed in said answer that he, Campbell, have judgment against his codefendant, J. Coody Johnson, for such sum as determined to be due the plaintiff; that in said cause No. 6188 J. Coody Johnson filed his answer and admitted the said D. Campbell did not owe the note, but that in fact he, Johnson, owed the same, and

that the name of D. Campbell was merely used for the convenience of all parties concerned; that no part of the consideration extended by said note ever passed to D. Campbell, and thereafter in said cause judgment was rendered in favor of plaintiff bank against D. Campbell for the amount due for and further judgment rendered in favor of Campbell against Johnson for a similar amount.

Defendant herein, J. Coody Johnson, alleges and states that the deed given to the said D. Campbell was simply given as alleged by the said D. Campbell in his answer in cause No. 6188, as foresaid, for security to the said Campbell for accommodation in signing the notes to the bank; that said deed was not intended for a conveyance, but was as alleged by the said D. Campbell in suit No. 6188, wholly without consideration, and therefore the said Campbell never received, obtained, or owned any beneficial interest or estate in the lands situated in Hughes county; that plaintiff, Campbell, has no claim upon the land or upon any monies from the production of oil and gas or other things in the nature of lands or proceeds derived therefrom, and prayed that plaintiff take nothing.

For cross-action defendant Johnson alleged that the suit of the plaintiff was maliciously filed and with the intent on the part of plaintiff to damage defendant; that he, defendant, has been damaged in various sums, and prayed judgment in his cross-action for the sum of $21,000.

A demurrer on the part of plaintiff was sustained to the cross-petition of defendant Johnson. Thereafter, the defendant J. Coody Johnson filed an amendment to his answer, which amendment set forth and alleged, in substance, as follows: That he and the plaintiff, during the year 1917, had a business transaction by which defendant executed the deed mentioned in plaintiff's petition: that in payment for said deed the plaintiff borrowed from the Security State Bank the sum of $2,500, which the plaintiff paid to defendant; that at the time of the execution of said deed and the payment of money aforesaid plaintiff had actual knowledge of the pendency of a suit in Hughes county involving the title to said land, and had actual knowledge that after a trial of the case in the district court of Hughes county, the cause had been appealed to the Supreme Court, which court had remanded said cause to the district court of Hughes county for a new trial and at the time said deed was made; that after the making of said deed and payment of the money

aforesaid, the cause was retried in Hughes county, involving the title to the land which resulted in judgment divesting this defendant of any title or claim which he might have had in said land; that the plaintiff and this defendant were both present and attended such trial; that sometime after said trial, defendant, in order to protect his warranty in the deed executed to plaintiff, appealed said cause to the Supreme Court of Oklahoma, a short time after which, the exact date being unknown to defendant, plaintiff requested defendant to repay him the purchase price of said land represented by said note made to the Security State Bank, which was then unpaid, but which had been renewed. This defendant and the plaintiff did then and there agree that defendant should repay the plaintiff the amount of indebtedness which defendant then owed the bank on account of said transaction.

Thereafter the Security State Bank instituted a suit against the plaintiff, Campbell, to recover on the sum representing the consideration for the warranty deed, in which action the defendant Campbell answered, as is shown by the copy of his answer attached to the defendant's original answer herein.

Thereafter defendant Johnson, upon motion of plaintiff, Campbell, defendant in cause No. 6188, became and was made a party defendant in cause No. 6188, and filed his answer in said cause admitting liability to the said Campbell as per his agreement as alleged; that upon trial in cause No. 6188, as between defendant Campbell and defendant Johnson, the issue presented to the court by the statement of counsel, evidence offered and argument of counsel, and the matter adjudicated by that court was the extent of liability of J. Coody Johnson to D. Campbell on account of failure of title to the land described in plaintiff's petition; that the issue on which the court rendered judgment in that cause, No. 6188, as between plaintiff and defendant here was the identical matters which are now in this action involved; and that on account of the same issue being presented and determined by a court of competent jurisdiction between the same parties, judgment in said cause is now a bar to the prosecution and maintenance of this action; that in cause No. 6188, plaintiff Campbell elected to pursue his recourse against defendant here for breach of warranty in the deed described in plaintiff's petition herein, and that on account of such election and on account of said matter being submitted to the court, and on account of the judgment in said cause, plaintiff is

now barred and estopped from maintaining this suit; that after judgment in cause No. 6188 in the district court of Seminole county, D. Campbell caused an execution to be issued against defendant Johnson, and that in pursuance of said execution defendant paid to plaintiff the sum of $5,163.40 in full satisfaction of the judgment in favor of D. Campbell and against J. Coody Johnson in cause No. 6188; that said execution was directed to be issued by the plaintiff, Campbell, after he had filed this cause, and he, Campbell, accepted the amount of money above set forth in full settlement of the judgment after he had full knowledge of all facts alleged in his petition in this cause, and he is thereby estopped from prosecuting this action.

Thereafter, plaintiff, Campbell, filed his motion to strike the amendment filed by defendant Johnson, for the reason that the amendment is at variance from the answer filed by defendant and inconsistent with such answer; that in said answer it is denied that the deed executed by defendant to plaintiff was a conveyance, but was to secure the payment of money, while in said amendment it is alleged that said deed was a conveyance, but that the same was rescinded by an agreement of the parties; that both of such defenses were not available.

Upon the hearing upon such motion, the court required the defendant to elect whether he stood on the allegations of the original answer of the amendment as to the effect of the deed executed, whereupon defendant elected to stand on the allegations of the amendment, and the plaintiff thereupon filed his reply generally and specifically denying the new matters set up in the answer of defendant.

Upon the issues thus made a trial was had to the court who made the following findings of fact and conclusions of law:

"I find that on or about October 16, 1917, the defendant Johnson, represented to the plaintiff, Campbell, that he had procured a reversal by the Supreme Court of a case theretofore decided adversely to him in the Hughes county district court, which case involved the title to the northwest quarter of section 3, township 9 north, range 9 east in Hughes county, Okla. That thereupon the parties entered into negotiations which culminated in an agreement by which the defendant executed and delivered a deed to plaintiff, for which he received $500 in cash and was to receive $3,000 in addition upon his delivery of possession to the plaintiff; that within a few days after the said transaction, the defendant being in need of money procured the plaintiff, Campbell, to pay him

$2,500 on the purchase price of the said lands, which sum the plaintiff borrowed from the Security State Bank of Wewoka, and that at said time the defendant agreed to repay the money to plaintiff in the event he was not able to deliver possession of the real property theretofore conveyed; that Campbell did not record the said deed for the reason that the land was in litigation.

"I find that thereafter, and on the 13th day of September, 1921, upon retrial of the cause of the heirs of Alexander against the defendant Johnson, in the district court of Hughes county, involving title to the property conveyed, Johnson was again unsuccessful, but prosecuted an appeal from the judgment to the Supreme Court; that immediately after the adverse decision of the district court, plaintiff, Campbell notified Johnson that she wanted nothing further to do with the land or litigation and demanded the return of his money, and that Johnson agreed to return the consideration, but was unable to do so at that time.

"That thereafter, and on the 6th day of May, 1922, the Security State Bank brought suit against plaintiff, Campbell, in the Seminole district court on the notes executed to it for the $2,500 paid over to Johnson, and on the 26th day of May, 1922, Campbell answered the bank's petition by pleading that the bank had procured Johnson to sell the land to Campbell for the purpose of reducing Johnson's indebtedness to it; that the title to the land had absolutely failed, and he was entitled to a return of the money from Johnson, and prayed that Johnson be made a party to the bank action, and if judgment be rendered against him that he have judgment over against Johnson; that thereafter, on the 29th day of February, 1924, the plaintiff, Campbell, filed in the same action, a supplement to his answer, pleading that he was an accommodation maker on the said note and prayed that Johnson be made a party, and that he have judgment over against Johnson; that on the same date, Johnson voluntarily appeared and answered in the said cause, confessing the allegations of Campbell's pleadings. Whereupon, and on the 3d day of March, 1924, judgment was rendered in favor of the bank against Campbell and over against Johnson in the total sum of $3,816, with interest and attorney's fees, and thereafter execution was issued on said judgment and paid in full by defendant Johnson.

"I find that on the 22nd day of November, 1922, defendant Johnson dismissed his appeal from the judgment of the Hughes district court, in consideration of the payment to him by one Heller of the sum of $2,500, and a further agreement to divide equally the profit from the sale of an oil and gas lease covering the lands involved; that the defendant received the said $2,500 on the 8th day of December, 1922, and there-

after and prior to March 3d, 1924, received additional sums aggregating about $16,000, and that there is now in the hands of the court clerk of Seminole county, an additional sum of $5,500 as the balance of the profit derived from the sale of the oil and gas lease.

"I find that the defendant Johnson has not repaid the partial payment of $500 made to him by Campbell.

"Conclusions of Law.

"I conclude, as a matter of law, that the parties rescinded and abandoned the original transaction, and that plaintiff is estopped from recovery in this action, by his conduct and by the judgment rendered on his pleadings in cause No. 6188 of the Seminole district court; that the plaintiff have judgment against the defendant for $500 and interest thereon at 6 per cent. from October 16, 1917.

Plaintiff filed his motion for new trial, which was overruled, and this cause is here upon the plaintiff's appeal.

Plaintiff, in his petition in error, assigns nine assignments of error, and presents such assignments of error under the general proposition, i. e., that the judgment is contrary to the law and the evidence.

Defendant in error has filed in this cause his motion to dismiss the plaintiff's appeal because no case-made has been served, settled and signed as by law provided, and because no transcript or case-made has been filed in this court within the time allowed by statute, which motion we are called upon to dispose of before passing upon the merits of the appeal otherwise. This cause was tried in the district court to Hon. Hal Johnson, judge of the Tenth judicial district, who had been duly assigned to Seminole county under order of the Chief Justice of the Supreme Court, the Hon. George C. Crump, resident judge of district No. 9 being disqualified to try the cause, and he, Hal Johnson, while judge of said trial court, made the first order extending time to make and serve case-made in this cause; thereafter, and before the expiration of the date fixed in the first order, the parties to this cause entered into a stipulation (C.-M. p. 319), which provided that B. F. Davis be and is appointed special judge to act on motion of plaintiff for additional time to make, prepare and serve case-made, and that plaintiff be granted 60 days' additional time within which to prepare and serve case-made. Thereupon, and within the time given under the first order, a second order of extension was signed by George C. Crump, district judge, and B. F. Davis, special judge. Thereafter, within the time granted under the second order, a third order of exten-

sion of time was granted plaintiff in which to make, prepare and serve case-made, the third and last order of extension being signed by Hal Johnson, at Holdenville, Hughes county; that the said Hal Johnson, trial judge, at the time and date he signed said last order of extension, had been duly assigned by the Chief Justice of the Supreme Court to hold court in Seminole county, Ninth judicial district, for a period of two weeks, beginning March 22, 1926, the date on which said last order of extension was signed. The order of assignment of the Chief Justice recited in part as follows:

"It being made to appear as provided in section 9, art. 7 of the Constitution, that the public business requires it, etc."

It is contended by defendant in error that the second order of extension signed by George C. Crump, district judge, and B. F. Davis, special judge, is invalid and void because the district judge was disqualified in said cause, and that there was no law or authority for the selection of a special judge to make such order of extension.

The contention of the defendant in error is erroneous in so far as the disqualification of the regular district judge, who signed the order, is concerned. As to the question whether a special judge could be selected for such purpose, this is not necessary to be determined for the reason that this court, in the case of Shawnee Nat. Bank v. Van Zant, 84 Okla. 107, 202 Pac. 285, held in the first paragraph of the syllabus:

"A district judge, who has been assigned by order of the Chief Justice to hold court in a county outside of the district in which he is elected, has no authority, after the expiration of the time fixed in the order assigning him to hold court in said county, to grant an extension of time in which to prepare and serve case-made, in a case tried before him while lawfully holding court in such county, and although the regular judge in said district has certified his disqualification to try said case on the merits, he may grant an extension of time in which to prepare and serve case-made."

Defendant in error cites in support of his contention that Hon. Hal Johnson had no power and authority to grant the third extension because he was not holding court in Seminole county at the time he signed the last order of extension, citing the case of Razzberry v. State, 4 Okla. Cr. 613, 103 Pac. 865, which case we have examined, and find it is not based upon a similar state of facts as is presented in the case at bar. The case at bar meets the objections pointed out in the Razzberry Case; that is, that the order extending time to prepare and serve case-

made must be signed by the resident judge, or by a judge pro tempore, who has charge of the docket of the court in which the case was pending. Under the order of assignment by the Chief Justice, the assigned judge has the right to make an order and exercise jurisdiction over matters, and the cause pending in the district court of Seminole county, to the same extent as the regularly elected resident judge of such district, so long as the assigned judge was within the Ninth judicial district, and within the period of time specificed in the order of assignment.

The fact that the assigned judge, who made or signed the last order of extension, was holding court in Hughes county at the time of signing such order, is immaterial. He was within the district to which he had been assigned, and had under and by virtue of the Constitution, and the order of the Chief Justice assigning him, and under section 787, C. O. S. 1921, as much power and authority to enter such order as would the regular resident judge of such district have. The territorial court of this state laid dowr the following rule in the case of Whiteacre v. Nichols, 17 Okla. 387, 87 Pac. 865;

"The presiding judge of a district, either at chambers or while sitting as a court, or the judge who tried the case, if clothed with authority by assignment, while in the district, may extend the time in which to make and serve a case-made."

We therefore conclude and hold that the motion to dismiss appeal should be denied.

Plaintiff in presenting grounds for reversal of judgment argues his assignments of error under the following propositions:

(1) Defendant cannot assail his own deed. (2) Under the facts plaintiff's action sounds in tort. (3) The defendant was trustee of plaintiff. (4) There was no rescission. (5) The plaintiff is not estopped by judgment. (6) There was no election of remedies by plaintiff. (7) Plaintiff is not estopped.

Under the first proposition presented plaintiff says the defendant attempted to disparage the title which he conveyed to plaintiff; that such was done by questions propounded to the plaintiff on cross-examination and by testimony of the defendant himself.

The testimony referred to is not set out in the brief, and from a reading of the entire record, we do not find any particular evidence given or admitted over objection of plaintiff, tending to disparage the title, or that apparently materially affected the judgment. Some testimony was given or elicited regarding the title, but that apparently was for the purpose of showing the attitude and opinion of plaintiff as to title, and whether or not plaintiff rescinded and abandoned the contract. We agree with plaintiff that defendant cannot assail the validity of his deed, and we do not find where he attempted to do so.

The second assignment, "Under the facts plaintiff's action sounds in tort." Considerable argument and citation of authority are presented by plaintiff to support his contention that the action was one of tort. In view of our holding in this case, we do not deem it necessary to discuss or determine the nature of plaintiff's action, whether it be one upon breach of warranty, tort, or an action for money had and received.

Under the third proposition, it is argued that the defendant was trustee of plaintiff. We find no fault or objection as to argument and authorities presented under this head, as applied to facts similar to those presented in the cases in brief of plaintiff. However, we think the facts in the case at bar as found by the trial court do not create defendant trustee of plaintiff, and under our holding on the next or fourth proposition, the contention here is there disposed of.

Plaintiff's fourth proposition, "There was no rescission," raises the main and important question in this case.

The trial court, after stating his findings of fact, concluded as a matter of law that the parties rescinded and abandoned the original transaction, thereby finding as a matter of fact that the parties had rescinded and abandoned the original transaction. If such conclusion of law is correct, as applied to the evidence, then the other matters presented and argued upon appeal are not necessarily essential to a determination of this appeal.

Aside from the conduct and pleadings of plaintiff' here in the bank case, No. 6188, the same being the suit on notes given by plaintiff to the bank, the proceeds of which were paid to defendant, there was testimony by defendant Johnson, a part of which was as follows:

(C.-M. p. 194, defendant testifying regarding the land in question and title thereto, said:) "Q. All right, go ahead. A. So we tried that case over at Holdenville before Judge Coffman, and in the trial Judge Coffman ruled against us, we lost it. In the meantime, Willie Alexander appeared to have sold this land to Judge Thompson, J. B. Thompson, who was his attorney, and in the meantime, Mr. Thompson died. so that

when we brought suit after that, we had to revive it in the name of his administrator, who was his wife, Mrs. Thompson. That was in 1921. A few days after I returned from this trial over in Hughes county— * * * Q. Was Mr. Campbell at that trial? A. Yes, sir, he was right there. Q. All right, go ahead. A. A few days after our return to Wewoka, we were all pretty well disgusted with the way the court treated Judge Baker over there, and we discussed it, Mr. Campbell and Judge Baker and myself, and we were in your private office in Wewoka, and Mr. Campbell said 'Now, I don't believe you are going to ever win that suit.' He knew at that time that Judge Baker had given notice of appeal. He says, 'I don't believe you are ever going to win that, and I want my money back. The bank is pressing me for this money, and I want my money back. You can go ahead with it, if you want to, but the title has failed, and I want my money back.' That was in '21, and I agreed with him, as I had always agreed with him that I would refund his money if the title failed to the land, and I said, 'Well, I haven't the money just now, but I am expecting to get in some money, and I will pay it to you,' and we had that agreement that I was to refund his money. Q. What, if anything, did Judge Baker say about the trial at that time? Q. In order to refresh your memory, didn't Judge Baker say at that time he was going to win that case, in words or substance that? Mr. Orr: Objected to as incompetent, irrelevant and immaterial. The Court: Was Mr. Campbell present at the time? Witness: Yes, sir. The Court: Overruled. A. Yes, he did, he said 'I am just as sure to reverse Judge Coffman as I am that we are sitting here talking,' and then we would discuss the matter and——Q. What did Campbell say? A. He said, 'Don't make any difference what comes. You can go on with your appeal if you want to, that's all right, but what I want is my money back,' and I agreed with him then that I would try to reimburse him soon."

Following this testimony by defendant Johnson, he gave further testimony respecting the dismissal of his appeal, and detailed conversations with plaintiff regarding the payment of the amounts by Campbell, or for which he was liable and the suit on the notes to the bank.

At case-made, page 214, is shown check given by defendant Johnson to plaintiff, Campbell, dated July 31, 1924, for the sum of $5,163.40 in payment and satisfaction of the judgment rendered in case No. 6188, such suit being the one on the notes given by plaintiff, Campbell, to the bank, the proceeds of which notes were paid to defendant Johnson, as is contended, as part of the purchase price on the land.

Defendant Johnson was corroborated by the witness Guy Cutlip, who testified in part as follows (C.-M. 264):

"Some time on or about the time of a trial in Holdenville in regard to the land of Willie Alexander in controversy in this case Judge A. J. Baker and Coody Johnson and Mr. Campbell were in my office. I was not connected with that litigation whatever. That case had been lost in the court at Holdenville, and the discussion was going forward in my office in my presence. In that conversation Mr. Campbell stated that he was out of it; he wouldn't have anything more to do with the litigation, and what he wanted was his money back on that deed that Coody had given him, and then I believe Coody said he didn't have the money at that time, and Campbell said 'you can just pay me 500 at a time and that will be sufficient.' Judge Baker had a great deal to say, and there was quite a bit of conversation, but that is substantially what was said by Campbell and Coody at that time, * * * Mr. Cutlip: After the trade had been consummated with Mr. Heller, Mr. Campbell came to me, knowing that I represented Coody probably. Mr. Orr: Object to what he probably knew about it, and move it be stricken. Mr. Cutlip:—and insisted that I have Coody pay him back the money he had paid Coody on the deed to the land involved in the trade with Heller, and at that time Campbell was very mad because Coody hadn't paid him his money back, because he said he understood that he had received $2,500, and I told Campbell at that time I knew he had received $2,500, and that he was entitled to his money back. * * * Cross-examination: Q. When was the last conversation, Guy, that you are telling about here, you had with Campbell? A. I couldn't tell you exactly, but that trade took place sometime the latter part of 1922, I heard of it first being closed at the time, and it would be around the first of the year '23. Q. Did he say anything to you about Coody having gotten the sum of $11,000 in cash or approximately that? A. He knew about that, yes; he talked to me about that. Q. In regard to that at that time? A. Not at that time, but later on. Q. The conversation he had with you about this money that Coody got, was after the litigation in the Security Bank case, and a short time before he came to me with this suit, wasn't it? A. No, sir. He never talked to me after that litigation, except in this, that he was there after me time and again, trying to get me to have Coody pay this judgment off so he could pay the bank. Q. He told you at that time that he just borrowed that money as an accommodation for Coody Johnson? A. No, sir, he didn't tell me anything of the kind. He said that Coody Johnson owed him that money back on that warranty in the deed because the title had failed, is what he told me time and again. Q. He never claimed any title

in that land or any interest in that litigation after 1921, did he? A. Why, as far as I know he did not. What he claimed was what he paid Coody and he wanted it back, and he got it back, all except $500, in this judgment."

Plaintiff Campbell, while denying in substance the conversations and statements attributed to him by defendant and other witnesses, did give certain testimony, as follows:

Referring to deed to land (C.-M. 181): "Q. Then why didn't you put the deed on record? A. Because we agreed we would let the litigation go ahead in his (Johnson's) name. Q. Suit between Mary Thompson and Coody Johnson? A. Yes. Q. And you never did file your deed? A. No. (Case-made 285.) Q. Now, state whether or not you had attempted to have Coody (Johnson) pay off these notes from time to time. A. Yes, sir. Q. Why did you do that? A. Well, in the first place, the notes had accrued to a point where it was hard—it came to more than what I was owing him at the time I got the land, and that was the first time Mr. Parmenter came to me and got me to go to Coody to get more security, and I went to Coody about it. (Case-made, 286.) Q. You got Coody to execute an oil and gas lease on the assurance that you would make a sale of the oil and gas lease, didn't you? A. I didn't assure him at all. I told him I had a chance to sell it. Q. You knew about the Mary Thompson transaction, didn't you? A. Yes, I talked with her son. * * * Q. And you told Coody at the time that he gave you the oil and gas lease that you believed you could sell the oil and gas lease to her, didn't you? A. Yes. I had talked with her son. Q. And had some kind of arrangement whereby you would get some money out of it? A. Yes, that was the object. Q. And in that way you could get your money back that you paid Coody on this old deal? A. No. Q. How? A. There wasn't going to be enough of it to pay that, * * * there wasn't going to be enough to pay that claim at the bank. Q. Now, that transaction didn't go through did it? A. No. sir. (Case-made, 289.) Q. Now, all along, Mr. Campbell, after this trial of this suit, before Judge Coffman at Holdenville, your position was that the title to this land had failed, wasn't it? A. That's what I thought it was going to do. Q. What? A. I thought it was going to do it. Q. Now, then, in connection with that matter, you wanted the money back that you had paid out on this deed, didn't you? A. Certainly."

We have read the entire evidence and record in this case, and it appears that the findings of fact by the court, as herein elsewhere set out, are substantially correct, and in accord with the evidence.

Plaintiff says:

"Nowhere in the record does it appear that a written instrument was signed between the parties rescinding the original transaction, that plaintiff quitclaimed said land or returned the deed, nor does it appear that defendant restored everything of value which he had received by the original transaction. Clearly, under the law there was no rescission of the original transaction."

No statute or authority is cited by plaintiff showing it necessary, under a state of facts as in this case, for parties to execute a written instrument in order to rescind or abandon their original agreement or contract, and we know of none.

In the case of Hart v. Frost, 73 Okla. 148, 175 Pac. 257, this court in the second paragraph of the syllabus, said:

"Parties to a written contract may, by a subsequent executed parol agreement, annul the whole or any portion of said contract; and the purpose and effect of evidence of such parol agreement is not to vary the terms of the written contract, but to show that by mutual consent it was changed, rescinded, or annulled."

Plaintiff testified he did not place the deed of record in order that the litigation respecting the title to the land might go ahead in defendant's name. He testified, (C.-M. 185), in reference to the land, that he never got title to the land, never owned it, just got the deed. However, upon further examination by his counsel, he said he meant he never got possession. If the evidence of defendant and the witness Cutlip is true, then the plaintiff considered the title as being in another, the other claimant to the title, after the decision of the Hughes county district court in 1921, and he, plaintiff, declined to have anything further to do with the litigation, and in effect withdrew his authority for further prosecution of an appeal; apparently, he considered his title as having failed, under the judgment of the Hughes county district court, such judgment being final as to him. True, after the date of the Hughes county judgment, the plaintiff solicited and obtained from defendant an oil and gas lease, the lessee's name being in blank, not under the claim of ownership, as is asserted by plaintiff in brief, but rather, as it appears, with the hope and for the purpose of getting something out of such lease from the other title claimant to the land so as to reimburse plaintiff for moneys paid out by him to defendant on the title.

Section 5075, C. O. S. 1921. "Contract May be Extinguished. A contract may be extinguished in like manner with any other obligation, and also in the manner prescribed in this article."

Section 5076, C. O. S. 1921. "Rescission

Extinguishes. A contract is extinguished by its rescission."

Section 5077, C. O. S. 1921. "Cases When Party May Rescind. A party to a contract may rescind the same in the following cases only:

"Second. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part.

"Third. If such consideration becomes entirely void from any cause.

"Fourth. If such consideration, before it is rendered to him, fails in a material aspect from any cause; or,

"Fifth. By consent of all of the other parties."

In the case of Martin v. Spaulding, 40 Okla. 191, 137 Pac. 882, in an opinion by Justice Kane, the same being a case the facts of which are somewhat similar to the case at bar, the reasoning therein answers some of the contentions of plaintiff here. In that case, the defendants, who were the owners of certain real estate, entered into a written contract with the plaintiff for the sale of certain lands, $50 being paid to the seller on the contract, the balance to be payable later, upon submission of deed, the premises to be free from all incumbrances. It appeared in that case that the title to the lands in the seller was clouded by some form of suit, and the buyer declined to make final payment except upon condition that title be shown clear in the seller. After about four years of delay, and while title was still clouded, the buyer brought suit against the vendor for specific performance, and the trial court, under the evidence, held that plaintiff had abandoned the contract. It was urged in that case, as here, in this case, that since the vendor retained the money paid him on the purchase price, such act was a circumstance tending to show the intentions of the parties, and precluded the defendant from rescinding the contract or treating it as rescinded. The plaintiff here cites a number of cases holding that everything of value must be restored by one seeking rescission. The court, in the Martin v. Spaulding Case, supra, in reply to the above contention, said:

"In the case at bar, however, the defendants are not praying for affirmative relief. In note 4 to section 393, 1 Pomeroy on Equity Jurisprudence (3d Ed.), it is said that the principle invoked by counsel 'applies to a defendant who sets up an affirmative equitable defense, claiming some affirmative relief, since he is then in exactly the same position as plaintiff.' See Tongue v. Nutwell, 31 Md. 302. This must be the true limitation of the principle in its application to defendants; it certainly does not and cannot apply to defendants generally, who merely seek to defeat the plaintiff's demand, and ask no affirmative relief for themselves, either directly or indirectly."

The fifth paragraph of the syllabus of the above case is as follows:

"5. The rule that a vendor, when he elects to rescind a contract for the sale of real estate, 'must restore to the other party everything of value which he has received from him under the contract' (section 986, Rev. Laws 1910, sec. 5079, C. O. S. 1921), does not apply to the defendant in a suit for specific performance commenced by the vendee, where the vendor pleads an abandonment of contract for the purpose merely of defeating the plaintiff's demand, and does not set up any affirmative equitable defense or claim any affirmative relief."

To the same effect: Beatty v. Winthrop Land Co., 53 Okla. 118, 155 Pac. 574; Hurley v. Anicker, 51 Okla. 97, 151 Pac. 593.

Under the provisions of section 5079, C. O. S. 1921, it is provided that in rescission, when not effected by consent, the party rescinding must restore to the other party everything of value which he has received from him under the contract, and it will be observed that this provision applies only when the rescission is not effected by consent. In the case at bar, it was not the vendor who rescinded, rather the vendee, and the rescission was effected apparently with the consent of both parties. It was held by this court, in the case of Hurley v. Anicker, supra, that where a rescission was mutually agreed upon, the purchaser might recover money paid in part performance, but the holdings do not require that, in order to rescind under mutual consent, the consideration must be repaid before rescission could be effected; however, in the case at bar, and rightfully so, the court gave judgment against defendant for money paid under the original agreement.

The court further said, in Martin v. Spaulding, supra:

"Whether a contract is abandoned is a question of fact, to be determined by the court or jury from all the facts and circumstances of the particular case."

"Abandonment ordinarily is a question of fact to be determined by the jury under all the circumstances of the case." McMillin v. Titus, 222 Pa. 511, 72 Atl. 244.

The trial court in this cause saw and heard personally the witnesses and the evidence, and was in better position to pass upon the testimony than we are here.

This court has repeatedly held that:

"If, upon the trial of an issue of fact, a jury is waived, and the cause submitted to the court, a finding of fact made by the trial court upon conflicting testimony will not be reversed upon appeal if the testimony reasonably tends to support the judgment of the court." Dustin Gro. & Feed Co. v. Lucas, 91 Okla. 11, 215 Pac. 417; Baker v. Jack, 112 Okla. 142, 241 Pac. 478; Beams v. Step, 116 Okla. 291, 244 Pac. 775; Boggs v. McCasland, 117 Okla. 54, 244 Pac. 786.

"The Supreme Court will weigh the evidence in a case of purely equitable cognizance, but will not reverse the same unless it be clearly against the weight of the evidence." Anderson v. Moore, 118 Okla. 242, 247 Pac. 391.

"The findings of the trial court in equitable actions should be strongly persuasive, and should not be set aside unless the Supreme Court can say, in equity and good conscience that the conclusions reached by the trial court are clearly against the weight of the evidence." Keenan v. Scott, 99 Okla. 63, 225 Pac. 906.

While the testimony is conflicting, yet, taking the evidence and record as a whole, we think the same sufficient to warrant the trial court in saying that the parties rescinded and abandoned the original transaction. We are constrained to believe from the record that it was the intention of the parties to and that they did, as a matter of fact and of law, rescind and abandon the deal under which deed and contract plaintiff now seeks to recover.

Plaintiff's fifth proposition is that plaintiff was not estopped by judgment.

The trial court in its conclusion of law, in addition to holding that the parties had rescinded and abandoned the original transaction, found as a conclusion of law that plaintiff was estopped from recovering in the case at bar by his conduct and by the judgment rendered on his pleadings in case No. 6188 in the Seminole district court, such cause being the one in which the bank sued the plaintiff here, D. C. Campbell, to recover upon notes, the proceeds of which had been paid to defendant Johnson.

Plaintiff cites a number of decisions of this court laying down certain requirements and conditions necessary to constitute and maintain a good plea of res adjudicata, such as identity of parties, the same subject-matter, the issues the same, etc., which cannot be denied when applied to certain cases and state of facts. However, we think the following authorities and rules are more applicable to the case at bar.

"Upon a plea of former adjudication, a matter will be held res adjudicata, although not raised as an issue by the pleadings in the former action, if from the record it appears that it formed one of the premises upon which the judgment necessarily rested." Johnson v. Gillett, 66 Okla. 308, 168 Pac. 1031.

But, a right, question of fact distinctly put in issue and directly determined by a court of competent jurisdiction, cannot be disputed in a subsequent suit between the same parties or their privies, although the subsequent suit is on a different cause of action, and a plea setting up the former adjudication of a fact, right or question distinctly put in issue between the same parties or their privies is not a plea in bar, but a plea of estoppel by judgment. Identity of causes of action is not a necessary element in the plea of estoppel by judgment, but it is necessary that the point upon which the plea of estoppel by judgment is based be put in issue in the latter case and was in issue and decided in the former.

See, also, Swofford Bros. D. G. Co. v. Owen, 37 Okla. 616, 133 Pac. 193; Black on Judgments (2nd Ed.) vol. 2, sec. 506; So. Pac. Ry. Co. v. U. S., 168 U. S. 1, 42 L. Ed. 366.

The conduct and pleadings of the plaintiff, Campbell, in cause No. 6188, if not sufficient as a bar or estoppel, which we do not decide, were highly persuasive that he abandoned the trade with defendant, rescinded the same, and sought thereby to recover, or be relieved of liability, on the purchase price he had advanced upon the land in question.

Plaintiff's sixth assignment is that there was no election of remedies by plaintiff. The issues and pleadings in cause No. 6188 may not show an election on the part of plaintiff to sue on what strictly might be called a breach of warranty, but we think it does show an election on his part to recover the monies which he had borrowed and advanced on the purchase price on the land in question, or avoid liability upon the note given therefor, and shows that he elected to rescind and abandon the original contract. At the time plaintiff decided to proceed no further with the deal, he was as conversant with the facts relating to the title as the defendant. Neither plaintiff nor defendant could foresee the later developments on the land, or the value of a claim of title thereto. However, at the time the plaintiff accepted the check from defendant in payment of the judgment in case No. 6188, he was then conversant with the later developments, and knew of the quitclaim by defendant and the mineral rights claimed by defendant.

The seventh and last argument is covered under the head of "no estoppel." What we have heretofore said we think sufficient to cover the argument presented here. If in truth and in fact there had been a rescission and abandonment, then further argument on the question of estoppel by judgment or in pais is unnecessary.

Under the record and the decisions of this court, we conclude the judgment of the trial court should be and is affirmed.

BENNETT, TEEHEE, FOSTER, and REID, Commissioners, concur.

By the Court: It is ordered.

Note.—See under (1) 4 C. J. p. 348, 1989; anno. 42 L. R. A. (N. S.) 623. (2) 4 C. J. p. 879, §2853; 2 R. C. L. p. 193; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 73. (3) 4 C. J. p. 898, §2868; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 73. (5) 4 C. J. p. 1129, §3122.